No. 22-60596

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT


UNITED STATES OF AMERICA
Plaintiff-Appellee

v.

PATRICK DARNELL DANIELS, JR.
Defendant-Appellant


Appeal from the United States District Court
For the Southern District of Mississippi
Cause No. 1:22-cr-00058-LG-BWR-1

---

### BRIEF FOR APPELLANT

---

**Omodare B. Jupiter** (MS Bar #102054)
Federal Public Defender
N. and S. Districts of Mississippi
2510 14th Street, Suite 902
Gulfport, MS 39501
Telephone: 228/865-1202
Fax: 228/867-1907

**John W. Weber, III** (MS Bar #101020)
Assistant Federal Public Defender
John_Weber@fd.org

Attorney for Defendant-Appellant

## CERTIFICATE OF INTERESTED PARTIES

The undersigned certifies that the following persons have an interest in the outcome of this case:

1.    Patrick Darnell Daniels, Jr., Defendant-Appellant;

2.    Darren J. LaMarca, United States Attorney, Southern District of Mississippi, Jackson, Mississippi;

3.    Erica L. Rose, Assistant United States Attorney, Southern District of Mississippi, Gulfport, Mississippi;

4.    Jonathan David Buckner, Assistant United States Attorney, Southern District of Mississippi, Gulfport, Mississippi;

5.    Omodare B. Jupiter, Federal Public Defender, Northern and Southern Districts of Mississippi, Jackson, Mississippi;

6.    John W. Weber, III, Assistant Federal Public Defender, Southern District of Mississippi, Gulfport, Mississippi; and

7.    Honorable Louis Guirola, Jr., United States District Judge, Gulfport, Mississippi.

This certificate is made so that the judges of this Court may evaluate possible disqualification or recusal.

_s/ John W. Weber_
**John W. Weber, III**
Assistant Federal Public Defender

i

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested in this case. Oral argument will assist the Court in applying the law to the facts of the case.

# TABLE OF CONTENTS

page:

CERTIFICATE OF INTERESTED PARTIES ..........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................. ii

TABLE OF CONTENTS........................................................................................ iii

TABLE OF AUTHORITIES ...................................................................................v

I.  JURISDICTIONAL STATEMENT ...................................................................1

II.  STATEMENT OF ISSUES PRESENTED FOR REVIEW ...............................2

III.  STATEMENT OF THE CASE..........................................................................3

    A.  Relief sought on appeal.....................................................................3

    B.  Procedural history ............................................................................3

    C.  Statement of facts .............................................................................5

IV.  SUMMARY OF ARGUMENT...........................................................................9

V.  ARGUMENT ......................................................................................................11

    A.  Standard of review ..........................................................................11

    B.  18 U.S.C. § 922(g)(3) is unconstitutional because it violates the Second Amendment..................................................................................11

        1.  Daniels is one of "the people" granted Second Amendment rights under *Bruen* .................................................................................12

        2.  The Government cannot meet its burden to establish that 18 U.S.C. § 922(g) is "consistent with the Nation's historical tradition of firearm regulation." ...........................................................................14

a. A general prohibition on possession of firearms for users of intoxicants violates Mr. Daniels' Second Amendment rights under *Bruen* ..........15

b. A prohibition on possession of firearms for marijuana users also violates Mr. Daniels' Second Amendment rights under *Bruen* ..........18

C. 18 U.S.C. § 922(g)(3) is unconstitutionally vague on its face and as applied to Mr. Daniels ................................................................................................24

1. On its face, 18 U.S.C. § 922(g)(3) is unconstitutional because it fails to define the term "unlawful user." ...............................................................25

a. A facial challenge is proper. ..................................................................25

b. Section 922(g)(3) is void on its face ......................................................28

(i)  The term "unlawful user" is constitutionally vague ......................28

(ii)  The statute does not include a temporal nexus between substance use and firearm possession, rendering § 922(g)(3) unconstitutionally vague ..............................................................32

2. Section 922(g)(3) is void as applied to Mr. Daniels ................................36

D. The evidence was insufficient to establish the elements the Government was required to prove under 18 U.S. C. § 922(g)(3) ......................................................39

1. The Government failed to prove beyond a reasonable doubt that Mr. Daniels was an unlawful user at the time he was in possession of the firearms ......................................................................................................40

2. The Government did not prove beyond a reasonable doubt that Mr. Daniels "knowingly" violated the provisions of 18 U.S.C. § 922(g)(3) ...............42

VI. CONCLUSION ................................................................................................45

CERTIFICATE OF SERVICE ..............................................................................46

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................................47

# TABLE OF AUTHORITIES

page(s):

United States Constitution:

U.S. Const., amend. II........................................................................................11, 13


cases:

*Akron v. Akron Center for Reproductive Health, Inc.*,
462 U.S. 416 (1983).........................................................................................26

*Colautti v. Franklin*,
439 U.S. 379 (1979).........................................................................................26

*Connally v. General Constr. Co.*,
269 U.S. 385 (1926).........................................................................................25

*Corley v. United States*,
556 U.S. 303 (2009) ........................................................................................31

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ............................................................................. 12-13, 26

*Estate of Cowart v. Nicklos Drilling Co.*,
505 U.S.469 (1992) .........................................................................................28

*Johnson v. United States*,
576 U.S. 591 (2015) ...........................................................................25-27, 35-36

*Kolender v. Lawson*,
461 U.S. 352 (1983) .........................................................................................36

*Leary v. United States*,
395 U.S. 6 (1969) ............................................................................................19

*Marinello v. United States*,
138 S. Ct. 1101 (2018) ................................................................................27, 39

*Maynard v. Cartwright*,
486 U.S. 356 (1988) ............................................................25

*New York State Rifle & Pistol Association Inc. v. Bruen,*
142 S.Ct. 2111 (2022).................................... 3-4, 9, 12-16, 18, 23-24, 26

*Rehaif v. United States*,
139 S. Ct. 2191 (2019) ................................................. 42-43

*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997).............................................................28

*Smith v. Goguen*,
415 U.S. 566 (1974) ...........................................................25

*Smith v. United States*,
508 U.S. 223 (1993) ...........................................................28

*United States v. Bilodeau*,
24 F.4th 705 (1st Cir. 2022)..............................................22

*United States v. Bowen*,
938 F. 3d 790 (6th Cir. 2019) ...........................................32

*United States v. Carnes*,
22 F. 4th 743 (8th Cir. 2022) ...........................................34

*United States v. Connelly*,
No. EP-22CR229(2)-KC, 2022 WL 17829158 (W.D. Tex. Dec. 21, 2022) ..... 23-24

*United States v. Cook*,
970 F.3d 866 (7th Cir. 2020) ....................................... 34-35

*United States v. Delgado*,
256 F.3d 264 (5th Cir. 2001) .........................................11, 40

*United States v. Espinoza-Roque*,
26 F. 4th 32 (1st Cir. 2022)..............................................33

vi

*United States v. Hunt*,
129 F.3d 739 (5th Cir. 1999) ....................................................................42

*United States v. Morales-Lopez*,
No. 2:20cr00027JNP, 2022 WL 2355920 (D. Utah June 30, 2022).30-31, 35-36, 38

*United States v. Murphy*,
35 F. 3d 143 (4th Cir. 1994) ....................................................................28

*United States, v. Ocegueda*,
564 F. 2d 1363 (9th Cir. 1977) ................................................... 31-32, 34

*United States v Patterson*,
431 F.3d 832 (5th Cir. 2005) ..............................................................11, 25

*United States v. Percy-Macias*,
335 F.3d 421 (5th Cir. 2005) ....................................................................11

*United States v. Rahimi*,
No. 21-11001 (5th Cir. February 2, 2023)........................ 9, 13-14, 17, 24

*United States v. Sanchez*,
961 F.2d 1169 (5th Cir. 1992) ..................................................................42

*United States v. Sanders*,
43 F. App'x 249 (10th Cir. 2002) ............................................................33

*United States v Turnbull*,
349 F.3d 558, (8th Cir. 2003), *vacated on other grounds*, 543 U.S. 1099 (2005)..33

*United States v. Westbrooks*,
858 F.3d 317 (5th Cir. 2017) ..................................................................27

*United States v. Williams*,
553 U.S.285, 306 (2008)..........................................................................29

*United States v. Yancey*,
621 F. 3d 681 (7th Cir. 2010) ............................................................31, 34

*Westbrooks v. United States*,
138 S. Ct. 1323 (2018) ........................................................................27

statutes:

18 U.S.C. § 921 ....................................................................................29

18 U.S.C. § 921(a)(15) .........................................................................29

18 U.S.C. § 922(g)(3).........................................3-5, 8-9, 11-12, 15, 17-18, 23, 30-31

18 U.S.C. § 922(g)(4) ...........................................................................29

18 U.S.C. §922(g)(5).............................................................................42

18 U.S.C. §924(a)(2).............................................................................42

18 U.S.C. § 924(e) ................................................................................26

21 U.S.C. § 802 ............................................................................3, 28, 39

21 U.S.C. § 802(1) ................................................................................30

21 U.S.C. § 802(17) ..............................................................................30

21 U.S.C. § 811 ....................................................................................20

21 U.S.C. § 812 ...............................................................................18, 20

28 U.S.C. § 1291 ....................................................................................1

Pub. L. No. 116-6, § 537, 133 Stat. 13 (2019)) .......................................22

1907 Ariz. Sess. Laws 15......................................................................16

Cal. Health Code § 11362.5 (1996) .......................................................21

Miss. Stat. Ann § 41-29-139 ................................................................20

Or. Rev. Stat. § 137.225 ...................................................................... 20

1636–1748 R.I. Pub. Laws 31 ............................................................ 16

1896 R.I. Pub. Laws 232 .................................................................. 16

1899 S.C. Acts 97 ............................................................................ 16

1631 Va. Acts 173 ............................................................................ 16

1655 Va. Acts 401 ............................................................................ 16

<u>rules</u>:

Rule 4(b)(1)(A) of the Federal Rules of Appellate Procedure ................................... 1

<u>other sources</u>:

Amanda Cargill, *What Did the Founding Fathers Eat and Drink as They Started a Revolution?*, Smithsonian Magazine (July 3, 2018) ................................................ 15

Black's Law Dictionary (11th ed. 2019) ............................................... 29

Congressional Research Service Report R44782, *The Evolution of Marijuana as a Controlled Substance and the Federal-State Policy Gap* (updated April 7, 2022) ....................................................................... 19-20

Emma Green, *Colonial Americans Drank Roughly Three Times as Much as Americans Do Now*, The Atl. (June 29, 2015) ........................................ 15

https://www.fda.gov/news-events/public-health-focus/fda-and-cannabis-research-and-drug-approval-process (last visited February 1, 2023) .................................. 23

https://www.justice.gov/iso/opa/resources/3052013829132756857467.pdf (last visited February 1, 2023) ................................................................. 21-22

https://www.justice.gov/opa/press-release/file/1022196/download (last visited February 1, 2023) ........................................................................ 22

https://www.merriam-webster.com/dictionary/user ...............................................29

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5312634/. *Medicines   containing
cannabis were "sold openly in public pharmacies* ..................................................19

https://www.ncsl.org/health/state-medical-cannabis-
laws#:~:text=Medical%2DUse%20Update&text=3%2C%202022%2C%2037%20s
tates%2C,medical%20use%20of%20cannabis%20products (last visited February 1,
2023) ................................................................................................................21

https://www.ojp.gov/pdffiles1/Digitization/43880NCJRS.pdf at p. 183, 287 (last
visited February 1, 2023) ..........................................................................20

https://www.pbs.org/wgbh/pages/frontline/shows/dope/etc/cron.html   (last   visited
February 1, 2023) ...............................................................................19

https://www.scientificamerican.com/article/the-science-behind-the-dea-s-long-war-
on-marijuana/ (last visited February 1, 2023)..........................................................20

https://www.washingtonpost.com/archive/politics/1977/04/17/mississippi-
surprisingly-eases-marijuana-penalty/cbaa97ae-137e-4536-a4cf-8e6f3d0e3ef8/
(last visited February 1, 2023) ..........................................................................20

https://www.whitehouse.gov/briefing-room/presidential-
actions/2022/10/06/granting-pardon-for-the-offense-of-simple-possession-of-
marijuana/ (last visited January 27, 2023)........................................................22, 39

Mary Barna Bridgeman and Daniel T. Abazia, *Medicinal Cannabis: History,
Pharmacology,    And    Implications    for    the    Acute    Care    Setting*
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5312634/ (last visited February 1,
2023)........................................................................................... 18-19

# I. JURISDICTIONAL STATEMENT

This appeal arises from a final order of the district court sentencing Mr. Daniels, following a trial, to 46 months in prison for violating 18 U.S.C. § 922(g)(3), which makes it a crime for an unlawful user of a controlled substance, as defined in Title 21, United States Code, Section 802, to knowingly possessing a firearm which was in and affecting interstate and foreign commerce. Judgment, ROA.133; *see also*, Indictment, ROA.149. Mr. Daniels filed a timely Notice of Appeal pursuant to Rule 4(b)(1)(A) of the Federal Rules of Appellate Procedure. Notice of Appeal, ROA.141. Jurisdiction is vested in this Court under 28 U.S.C. § 1291.

## II.  STATEMENT OF ISSUES PRESENTED FOR REVIEW

1) Whether 18 U.S.C. §922(g)(3) is unconstitutional as violative of the Second Amendment to the United States Constitution

2) Whether 18 U.S.C. §922(g)(3) is unconstitutionally vague on its face and as applied to Mr. Daniels.

3) Whether the evidence was insufficient to prove the elements of 18 U.S.C. §922(g)(3) beyond a reasonable doubt.

## III.  STATEMENT OF THE CASE

### A.    Relief sought on appeal.

This Court should vacate Mr. Daniels' conviction and sentence and remand this case to the district court for a judgment of acquittal for three reasons. First, 18 U.S.C. § 922(g)(3) is unconstitutional because the statute is void for vagueness, both on its face and as applied to Mr. Daniels. Second, the government failed to meet its burden of proof. The Government did not present sufficient evidence to prove beyond a reasonable doubt that Mr. Daniels was an unlawful user of a controlled substance under 18 U.S.C. §922(g)(3) and that he knew he was an unlawful user. Third, the statute unconstitutionally deprives Mr. Daniels of his Second Amendment right to keep and bear arms under *New York State Rifle & Pistol Association Inc. v. Bruen,* 142 S.Ct. 2111 (2022).

### B.    Procedural history.

On May 17, 2022, the grand jury charged Mr. Daniels in a one-count Indictment with violating 18 U.S.C. §922(g)(3), which makes it a crime for a person, "knowing he was an unlawful user of a controlled substance, as defined in Title 21, United States Code, Section 802" to "knowingly possess a firearm which was in and affecting interstate and foreign commerce." Indictment, ROA.149-50.

Prior to trial, Mr. Daniels filed a Motion to Dismiss on the grounds that 18 U.S.C. §922(g)(3) is a facially unconstitutional restriction of a person's Second

Amendment right to bear arms based on the United States Supreme Court's ruling in *Bruen*. Motion to Dismiss, ROA.39. The district court denied the motion. Order Denying Motion to Dismiss, ROA.55.

Mr. Daniels filed a second Motion to Dismiss on July 21, 2022, arguing that 18 U.S.C. §922(g)(3) is void for vagueness on its face. Second Motion to Dismiss, ROA.78. The district court denied that motion on July 25, 2022, on the first day of trial. Tr. Vol. II, ROA.187-92. The district court noted that Mr. Daniels was not precluded from filing a motion for judgment of acquittal at the conclusion of the Government's case. Tr. Vol. II, ROA.192.

Mr. Daniels was tried by a jury on July 25 and 26, 2022. When the Government rested, Mr. Daniels made an *ore tenus* Motion for Acquittal based on the Government's failure to prove beyond a reasonable doubt the elements of the offense. Tr. Vol. II, ROA.244. Mr. Daniels also renewed his Motion to Dismiss on the ground that 18 U.S.C. § 922(g)(3) was void for vagueness, both on its face and as applied to Mr. Daniels. Tr. Vol. II, ROA.244-45. Mr. Daniels subsequently renewed his Motion for Acquittal at the close of all the evidence. Tr. Vol. III, ROA.261. The court denied the Motion for Acquittal but held in abeyance the Motion to Dismiss for constitutional vagueness pending the jury's verdict. Tr. Vol. II, ROA.248. The court ultimately denied the Motion, finding that 18 U.S.C. §

922(g)(3) was constitutional. Order Denying Motion for Judgment of Acquittal, ROA.125.

On July 26, 2022, the jury returned a verdict of guilty against Mr. Daniels. Verdict, ROA.517. On October 18, 2022, the court conducted a sentencing hearing. Tr. Vol. IV, ROA.294-311. Mr. Daniels was sentenced to 46 months imprisonment, 3 years of supervised release and a $2,000 fine. Judgment, ROA.133-39. The defense timely appealed. Notice of Appeal, ROA.141.

### C.     Statement of facts.

On April 25, 2022, Drug Enforcement Administration ("DEA") Task Force Officer Ray Bell and another officer stopped Mr. Daniels in Hancock County, Mississippi, for driving without a licensed tag. Tr. Vol. II, ROA.198-99. While conducting the traffic stop, Agent Bell said he smelled the odor of marijuana. *See id.* at ROA.199. The agents then searched the truck. They found a small number of burnt marijuana cigarette butts in the ashtray and two firearms. *See id.* at ROA.199-200. At that time, they arrested Mr. Daniels on an outstanding warrant. *See id.* at ROA.199, 222. Agent Bell admitted that he did not arrest him or cite him for marijuana possession or possession of firearms at that time. *See id.* at ROA.222.

Mr. Daniels made two statements to Agent Bell. He made the first statement at the time of the stop, which was not recorded, because neither the Hancock County Sheriff's Office nor the DEA require officers to wear recording devices. Tr. Vol. II,

ROA.200, 217-18. The second statement, made at the Gulfport DEA Office shortly after Mr. Daniels was arrested, was recorded. Gov. Exhibit 24, 24-A, ROA.443-448.

In the recorded statement, which was played for the jury, Agent Bell asked Mr. Daniels when he first used marijuana. Gov. Exhibit 24, 24-A, ROA.448. Mr. Daniels admitted that he started smoking marijuana after he graduated from high school. *See id.* at ROA.448. Mr. Daniels also confirmed that he and Agent Bell discussed his marijuana use as "approximately fourteen days out of a month" and Agent Bell testified to the same. Tr. Vol. II, ROA.201; Gov. Exhibit 24, 24-A, ROA.447. There is no testimony or evidence as to whether Mr. Daniels consistently smoked marijuana this often.

Agent Bell also asked Mr. Daniels where the "burned marijuana joints or blunts in the ash tray" had come from. Gov. Exhibit 24, 24-A, ROA.447. Mr. Daniels responded that,

> Ah, I mean I either smoked them over the time and they just either, like I put em out and like I told you the last time we met when you pulled me over at the Circle K, I stopped smoking in my house when I was staying there and lately since I've been sleeping in my vehicle I haven't really had money to purchase any that's why, what did you find maybe like two or three in there in the little ash tray?

*Id.* at ROA.447. Agent Bell did not ask Mr. Daniels when he stopped smoking marijuana, so he could not know when Mr. Daniels had quit using marijuana.

Agent Bell also testified that he had conducted a previous traffic stop on Mr. Daniels sometime around March 8, 2022, and that Mr. Daniels possessed both

marijuana and firearms at that time. Tr. Vol. II, ROA.210. Agent Bell stated that Mr. Daniels admitting to using marijuana, although he did not specify frequency or recency of use in his testimony. Tr. Vol. II, ROA.210. On cross-examination, Agent Bell admitted that he had not charged Mr. Daniels with either marijuana possession or firearms charges during that early March 2022 traffic stop. *See id.* at ROA.222. Notably, Agent Bell also admitted that he had not written a report on the March 2022 traffic stop, claiming that he "was two days in[to the job] and did not have access to anything." *Id.* at ROA.222. He "was just attempting to do what I could to justify my time, which is learn the roadways and participate in details with the other officers." *Id.* at ROA.223. He claimed that he was not the lead agent on that interaction, but he also admitted that he had not seen any reports regarding the March 2022 stop either. *See id.* at ROA.223.

Stephanie Armas, a forensic chemist with the DEA, testified that the cigarette butts contained marijuana and that the weight of the plant material found in the cigarette butts was only 0.446 grams. Tr. Vol. II, ROA.236; *see also* Gov. Exhibit G-29. She also testified, however, that her report showed substances other than THC, so the actual amount of the controlled substance could be less than the 0.446 grams. Tr. Vol. II, ROA.241-42. She did not perform a "quantitation" test. *Id.* at ROA.242.

The Government submitted no other evidence of Mr. Daniels' drug use.

The district court instructed the jury on four elements necessary to find Mr.

Daniels guilty of violating 18 U.S.C. § 922(g)(3):

> First, that the defendant knowingly possessed a firearm; Second, that at the time the defendant possessed the firearm, the defendant was an unlawful user of a controlled substance; Third, the defendant knew he was an unlawful user of a controlled substance; And fourth, that the firearm possessed traveled in interstate or foreign commerce; . . . ."

Tr. Vol. III, ROA.270. The district court then instructed the jury that marijuana is a

controlled substance and defined "unlawful user of a controlled substance" as

> a person who uses a controlled substance in a manner other than as prescribed by a licensed physician. The defendant must have been actively engaged in use of a controlled substance during the time he possessed the firearm, but the law does not require that he used the controlled substance at the precise time he possessed the firearm. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. An inference that a person was a user of a controlled substance may be drawn from the evidence of a pattern of use or possession of controlled substance that reasonably covers the time the firearm was possessed.

*Id.* at ROA.271. After the jury returned a verdict of guilty, the district court

sentenced Mr. Daniels to 46 months' imprisonment, the top end of the guideline

range. Judgment, ROA.133-39; PSR, ROA.484, ¶72. The guideline range was based

largely on the type of firearm found in Mr. Daniels' possession. PSR, ROA.475, ¶27.

Mr. Daniels has minimal non-violent criminal history, with two convictions for

marijuana possession that resulted in only fines. See id. at ROA.477, ¶¶37-38.

8

# IV.  SUMMARY OF ARGUMENT

18 U.S.C. § 922(g)(3) violates the Second Amendment right of the people to keep and bear arms as set forth in *Bruen*. This application of the statute is not consistent with this nation's historical tradition of firearm regulation and is unconstitutional as applied to Mr. Daniels based on the analysis in *Bruen* and this Court's recent decision in *United States v. Rahimi*, No. 21-11001 (5th Cir. February 2, 2023).

Title 18 U.S.C.§ 922(g)(3) is also void for vagueness on its face and as applied to Mr. Daniels. On its face, the statute is unconstitutional for two reasons. One, the statute fails to define "unlawful user" in any meaningful way. Two, although the statute does not include a temporal nexus between substance use and firearm possession, courts have universally and improperly imposed such a requirement to justify upholding the statute as constitutional. The statute is also unconstitutionally vague as applied to Mr. Daniels because it fails to provide clear and adequate notice that his conduct fell within the scope of the statute.

Additionally, the evidence in this case was insufficient to prove the elements of 18 U.S.C. §922(g)(3) beyond a reasonable doubt. The Government did not prove beyond a reasonable doubt that Mr. Daniels was an unlawful user of a controlled substance at the time he was found to be in possession of firearms. The Government also did not prove that Mr. Daniels knew he was an unlawful user of a controlled

substance. Therefore, the district court erred in denying Mr. Daniels' motion for acquittal.

## V.  ARGUMENT

**A.      Standard of review.**

This Court reviews all constitutional questions and all issues of statutory interpretation *de novo*. *United States v. Percy-Macias*, 335 F.3d 421, 425 (5th Cir. 2005).

In assessing a challenge to the sufficiency of the evidence, this Court asks "whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v Patterson,* 431 F.3d 832, 836. (5th Cir. 2005). Mr. Daniels preserved this error by making a motion to acquit at the close of the Government's case and by renewing the motion at the close of all the evidence. Tr. Vol. II, ROA.244, 261. Accordingly, the Appeals Court's review of the sufficiency of the evidence is also made *de novo*, according "substantial deference to the jury verdict." *United States v. Delgado*, 256 F.3d 264, 274 (5th Cir. 2001).

**B.      Title 18 U.S.C. § 922(g)(3) is unconstitutional as violative of the Second Amendment.**

This Court reviews *de novo* the district court's decision with respect to challenges to the constitutionality of a federal statute. *Percy-Macias*, 335 F.3d at 425. At trial, Mr. Daniels challenged the constitutionality of 18 U.S.C. § 922(g)(3) as a violation of his Second Amendment right to keep and bear arms by filing a Motion to Dismiss. For the reasons set forth below, the district court improperly denied that motion.

The Second Amendment states that, "A well regulated Militia, being necessary to the security of a free State, the right of *the people* to keep and bear Arms, shall not be infringed." U.S. CONST., amend. II. The Supreme Court's decision in *Bruen* set forth "the standard for applying the Second Amendment":

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S. Ct. at 2129–30.

### 1. Daniels is one of "the people" granted Second Amendment rights under *Bruen*.

In its order denying Mr. Daniels' Motion to Dismiss, the district court suggested that 18 U.S.C. § 922(g)(3), which prohibits an "unlawful user" of controlled substances from possessing a firearm, might not be "textually covered by the Second Amendment, insofar as it has been interpreted to guarantee the right to keep and bear arms to ordinary, law-abiding, responsible citizens concerned with self-defense." Order Denying Motion to Dismiss, ROA.59. The district court relied on the Supreme Court's language in *Bruen*, which states that "ordinary, law-abiding, adult citizens" are "part of 'the people' whom the Second Amendment protects." *Bruen*, 142 S.Ct. at 2134 (citing *Heller*, 554 U.S. at 580). The district court erred in its analysis.

12

The Second Amendment's plain text covers Mr. Daniels' possession of a firearm because Mr. Daniels is a member of the political community protected by the United States Constitution. *See* U.S. CONST., amend II. Neither *Bruen* (nor *Heller*, for that matter) purported to limit the guarantees of the Second Amendment to "law-abiding" citizens. Instead, both cases start with the presumption that "the people" means "all people" under the protective umbrella of the Constitution, as evidenced by the Supreme Court's holding that when the Constitution references the rights of "'the people,' the term unambiguously refers to all members of the political community." *See Heller*, 554 U.S. at 580; *Bruen*, 142 S.Ct. at 2126 (holding that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.").

This Court has adopted that stance as well. *See United States v. Rahimi*, No. 21-11001, 9 (5th Cir. February 2, 2023). In *Rahimi*, this Court reasoned that to begin the analysis of a statute with the idea that Second Amendment rights are limited in scope by the status of a person is improper because "(1) it is inconsistent with *Heller*, *Bruen*, and the text of the Second Amendment, (2) it inexplicably treats Second Amendment right differently than other individually held rights, and (3) it has no limiting principles." *Id.* at 7. Accordingly, even someone who is "hardly a model citizen" is still entitled to a presumptive right to keep and bear arms under the Second Amendment. *Id.* at 9.

In this case, Mr. Daniels, a citizen with no violent criminal history, possessed two firearms, both of which are "in common use." *See Bruen*, 142 S.Ct. at 2143. Accordingly, the Second Amendment presumptively protects his conduct.

> **2. The Government cannot meet its burden to establish that 18 U.S.C. § 922(g) is "consistent with the Nation's historical tradition of firearm regulation."**

In denying Mr. Daniels' Motion to Dismiss under *Bruen*, the district court relied primarily on pre-*Bruen* jurisprudence in reaching its conclusion. While some pre-*Bruen* cases have utilized historical analysis to evaluate restrictions on Second Amendment rights, they did so without the framework set forth in *Bruen*. Therefore, that precedent is rendered "obsolete," and the district court erred when it adopted this Court's pre-*Bruen* analysis wholesale. *Rahimi*, No. 21-11001 at 5-6 (holding that "*Bruen* clearly 'fundamentally change[d]' our analysis of laws that implicate the Second Amendment,[] rendering our prior precedent obsolete" (citation omitted)).

*Bruen* provides that when a court is required to analyze the "Nation's historic tradition of firearm regulation," two standards apply. *Bruen*, 142 S.Ct. at 2130-31. In some cases, the historical inquiry is "fairly straightforward." *Id.* at 2131. "For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a *distinctly similar* historical regulation addressing that problem is relevant evidence that the challenged regulation is

14

inconsistent with the Second Amendment." *Bruen*, 142 S.Ct. at 2131 (emphasis added). Where a challenged regulation addresses "unprecedented societal concerns or dramatic technological changes," courts need only find a "relevantly similar" regulation in order to restrict Second Amendment rights. *Id.* at 2132.

In this case, the distinctly similar standard applies. Section 922(g)(3) broadly addresses a general societal problem that has persisted since the eighteenth century: the possession of firearms by users of intoxicants.[1] However, whether this Court opts to utilize the "distinctly similar" or "relevantly similar" standard, a look at §922(g)(3)'s prohibition generally – users of intoxicants – and specifically – users of marijuana –demonstrates that the regulation is unconstitutional.

### a. A general prohibition on possession of firearms for users of intoxicants violates Mr. Daniels' Second Amendment rights under *Bruen*.

A collection of state firearm laws from 1607 to 1934 shows no Founding-era analogues to Section 922(g)(3)'s disarmament of all users of substances. *See* Robert J. Spitzer, *Guns Across America: Reconciling Gun Rules and Rights* 185–208 (2015).[2] Firearm regulation of users of substances were exceedingly rare until the

---

[1] *See, e.g.*, Emma Green, *Colonial Americans Drank Roughly Three Times as Much as Americans Do Now*, The Atl. (June 29, 2015); Amanda Cargill, *What Did the Founding Fathers Eat and Drink as They Started a Revolution?*, Smithsonian Magazine (July 3, 2018) ("From morning until night, people in the 18th century drank.").

[2] Some early to mid-1600s Virginia laws prevented people who used substances from wasting gunpowder by firing guns while under the influence. By their terms,

late nineteenth and early twentieth centuries. *See* Spitzer, *supra*, at 185–208. And even then, most laws regulating the nexus of firearms and substance use were narrow, barring certain people from using, purchasing, or possessing guns *while* they were under the influence.[3] In all events, "late-19th-century" and "20th-century evidence . . . does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, 142 S. Ct. at 2154 n.28. Therefore, a total prohibition on firearms for "unlawful users" of a controlled substance is inconsistent with historic laws addressing restrictions on an individual's right to keep and bear arms.

---

the laws sought to preserve gunpowder, not regulate public safety, and they regulated only persons who were intoxicated. *See* 1631 Va. Acts 173 ("No commander of any plantation, shall either himself or suffer others to spend powder unnecessarily, that is to say, in drinking or entertainments.") (cleaned up); 1655 Va. Acts 401 ("What persons or persons soever shall, after publication hereof, shoot any guns at drinking (marriages and funerals only excepted) that such person or persons so offending shall forfeit 100 lb. of tobacco to be levied by distress in case of refusal and to be disposed of by the militia in ammunition towards a magazine for the county where the offence shall be committed.").

Similarly, a 1600s Rhode Island law established a minor punishment—three hours or five shillings—for certain gunplay *while* drinking. *See* 1636–1748 R.I. Pub. Laws 31 ("That if any person or persons shall presume to sport game or play at any manner of game or games or shooting out any gun or shall set tipling & drinking in any tavern alhouse ordinary or vitling house on the first day of the week more than neccesity requireth and upon examination of the fact it shall be judged by any Justice of the Peace and the Person or Persons so offending as aforesaid.").

[3] *See, e.g.*, 1896 R.I. Pub. Laws 232; 1907 Ariz. Sess. Laws 15 (applying only to members of law enforcement who were intoxicated); 1899 S.C. Acts 97 (making it a misdemeanor for people "under the influence of intoxicating liquors" to discharge firearms on or near public roads).

This Court adopted similar reasoning in *Rahimi*. In *Rahimi*, this Court analyzed the validity of 18 U.S.C. § 922(g)(8), which prohibited a person subject to a domestic violence protective order from possessing a firearm. *Rahimi*, No. 21-11001 at 1. The Government cited three types of laws that it claimed were historic analogues to § 922(g)(8). *See id.* at 14. Of the three, this Court found only one category – surety laws – to be similarly relevant *See id.* at 19-22. Historic surety laws operated much as a domestic violence restraining order does today: "an individual who could show that he had 'just cause to fear' that another would injury him or destroy his property could 'demand surety of the peace against such person.'" *Id.* at 19-20. However, even with those similarities – the prevention of harm in a civil proceeding after notice and an opportunity to be heard – the Court rejected that analogy because historic surety laws, at most, "imposed a conditional, partial restriction on the Second Amendment right" and not an "absolute deprivation of the right . . . to *possess* any firearm. *Id.* at 20-21.

18 U.S.C. § 922(g)(3) imposes the same type of total restriction that §922(g)(8) does, and its historic analogues support, at most, a partial, temporary restriction, not a total prohibition on the Second Amendment right to bear arms. For these reasons, § 922(g)(3) violates the Second Amendment.

### b. A prohibition on possession of firearms for marijuana users also violates Mr. Daniels' Second Amendment rights under *Bruen*.

When Mr. Daniels' specific conduct – possession of marijuana – is analyzed, the evidence of historical regulation is even less persuasive, given the fact that for most of America's history, marijuana has not been criminalized. Section 922(g)(3) prohibits unlawful users of certain types of substances from possessing firearms by referencing the Controlled Substances Act of 1970, 21 U.S.C. § 801 *et seq*. That statute regulates the use of substances that range from illegal drugs, such as heroin and cocaine, to legal, prescription drugs used to treat pain (Tramadol); depression and anxiety (Valium, Xanax, and Ativan); ADHD in children (Ritalin and Adderall); and cold and allergy symptoms (medications containing codeine). *See* 21 U.S.C. § 812. *See also* https://www.dea.gov/drug-information/drug-scheduling (last visited February 1, 2023). Given the incredible breadth of the Controlled Substances Act, any analysis that looks at 18 U.S.C. § 922(g)(3) generally, without analyzing the specific conduct at issue, runs afoul of *Bruen*'s mandate that the court find a distinctly similar regulation.

Marijuana, or cannabis, is a botanical product whose usage spans centuries.[4] Cannabis was "widely utilized as a patent medicine during the 19th and early 20th

---

[4] *See* Mary Barna Bridgeman and Daniel T. Abazia, *Medicinal Cannabis: History, Pharmacology, And Implications for the Acute Care Setting*

18

centuries"[5] Congress first regulated cannabis in 1906 with the passage of the Pure Food and Drug Act, requiring any over-the-counter remedies containing cannabis to be properly labeled. *See* 21 U.S.C. § 1 (repealed). Recreational use of marijuana increased in the early 20th century, due to the influx of Mexican immigrants who brought cannabis into the United States following the Mexican Revolution of 1910.[6] By 1931, twenty-nine states had responded by outlawing marijuana.[7]

In 1937, Congress passed the Marihuana Tax Act.[8] The Act limited the legal uses for marijuana and levied taxes on its use. *See, e.g., Leary v. United States*, 395 U.S. 6, 14-15 (1969) (striking down the Marihuana Tax Act). After the Supreme Court struck down the law as unconstitutional for violating the Fifth Amendment protection against self-incrimination, marijuana was finally outlawed in 1970 with the passage of the Controlled Substances Act. *See id.* at 16-28; 21 U.S.C. § 801 *et seq.* The Controlled Substances Act identifies marijuana as a Schedule I drug, a categorization

---

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5312634/ (last visited February 1, 2023).

[5] *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5312634/. Medicines containing cannabis were "sold openly in public pharmacies." https://www.pbs.org/wgbh/pages/frontline/shows/dope/etc/cron.html (last visited February 1, 2023).

[6] *See* https://www.pbs.org/wgbh/pages/frontline/shows/dope/etc/cron.html (last visited February 1, 2023).

[7] *See id. See also* Congressional Research Service Report R44782, The Evolution of Marijuana as a Controlled Substance and the Federal-State Policy Gap (updated April 7, 2022).

[8] *See id.* at 3.

reserved for drugs that have a high risk for abuse and no medical use. *See* 21 U.S.C. §§ 811, 812.

Marijuana, however, was not initially intended to be a Schedule I drug.[9] Its placement there was provisional, pending scientific studies on its medicinal properties.[10] The American Medical Association initially opposed the prohibition on cannabis.[11] But politics prevailed, and marijuana was criminalized as a drug as addictive and deadly as heroin, despite scientific evidence to the contrary.[12] *See* 21 U.S.C. § 812.

Almost immediately after the Controlled Substances Act criminalized marijuana, however, states began taking steps to decriminalize it. In 1973, Texas and Oregon were the first states to decriminalize marijuana.[13] Mississippi decriminalized cannabis in 1977.[14] Simple possession in Mississippi is a misdemeanor, and a first offense results in only a fine. *See* Miss. Stat. Ann § 41-29-139. In 1996, California

---

[9] *See* Congressional Research Service Report R44782 at 6-7. *See also* https://www.scientificamerican.com/article/the-science-behind-the-dea-s-long-war-on-marijuana/ (last visited February 1, 2023).

[10] *See* https://www.scientificamerican.com/article/the-science-behind-the-dea-s-long-war-on-marijuana/ (last visited February 1, 2023).

[11] *See id.*

[12] *See id.*

[13] *See* https://www.ojp.gov/pdffiles1/Digitization/43880NCJRS.pdf at p. 183, 287 (last visited February 1, 2023); Or. Rev. Stat. § 137.225

[14] *See* https://www.washingtonpost.com/archive/politics/1977/04/17/mississippi-surprisingly-eases-marijuana-penalty/cbaa97ae-137e-4536-a4cf-8e6f3d0e3ef8/ (last visited February 1, 2023).

became the first state to legalize medical marijuana.[15] Other states followed, and today, 37 states, three territories, and the District of Columbia – including Mississippi – have legalized medical marijuana.[16] Additionally, 21 states, two territories, and the District of Columbia have passed measures to legalize the recreational use of marijuana.[17]

The federal government has also recognized that criminalization of marijuana under the Controlled Substances Act is overbroad. In 2013, the Department of Justice issued the Cole Memorandum that instructed United States' Attorneys to limit and prioritize prosecution for marijuana offenses.[18] The Cole Memorandum prioritized prosecutions in specific instances, such as cases in which marijuana was distributed to minors; funded criminal enterprises; or served as a cover for the trafficking of other illegal drugs.[19] The memorandum notes, in part,

> the Department of Justice has not historically devoted resources to prosecuting individuals whose conduct is limited to possession of small amounts of marijuana for personal use on private property. Instead, the Department has left such lower-level or localized activity to state and local authorities and has stepped in to enforce the CSA only when the

---

[15] *See* CAL. HEALTH CODE § 11362.5 (1996).

[16]*See* https://www.ncsl.org/health/state-medical-cannabis-laws#:~:text=Medical%2DUse%20Update&text=3%2C%202022%2C%2037%20states%2C,medical%20use%20of%20cannabis%20products (last visited February 1, 2023).

[17] *See id.*

[18]   *See*   https://www.justice.gov/iso/opa/resources/3052013829132756857467.pdf (last visited February 1, 2023).

[19] *See id.*

use, possession, cultivation, or distribution of marijuana has threatened
to cause one of the harms [priorities] identified above.

*See*    https://www.justice.gov/iso/opa/resources/3052013829132756857467.pdf.[20]

Most recently, President Biden announced that any convictions for simple

possession of marijuana, the only offense with which Mr. Daniels could have been

charged but for his possession of firearms, would receive full and unconditional

pardons.[21]

Use of marijuana continues to be decriminalized in other ways inside the

federal government. Since 2015, the Rohrabacher-Farr Amendment, an

appropriations rider attached to Congress' spending bills, has prohibited the

Department of Justice from spending funds that interfere with the states' rights to

implement medical marijuana laws. *See, e.g., United States v. Bilodeau*, 24 F.4th

705, 709 (1st Cir. 2022) (citing Pub. L. No. 116-6, § 537, 133 Stat. 13 (2019)).

---

[20] Attorney General Jeff Sessions rescinded the Cole Memorandum in January
2018, stating that the "previous nationwide guidance specific to marijuana
enforcement is unnecessary." *See* https://www.justice.gov/opa/press-
release/file/1022196/download (last visited February 1, 2023). AG Sessions
emphasized that previous principles for prioritization, contained in the U.S.
Attorneys' Manual, were sufficient. *See id.* Those principles are largely consistent
with the Cole Memorandum's priorities.
[21]*See* https://www.whitehouse.gov/briefing-room/presidential-
actions/2022/10/06/granting-pardon-for-the-offense-of-simple-possession-of-
marijuana/ (last visited January 27, 2023).

Additionally, the Federal Drug Administration has approved one cannabis-derived drug and three synthetic cannabis drugs for use by prescription.[22]

Based on this history of marijuana possession and usage, the prohibition on firearm possession found in 18 U.S.C. § 922(g)(3) is not "consistent with this Nation's historical tradition of firearm regulation." Marijuana is not a substance whose usage has long been criminalized. To the contrary, its criminalization in 1970 was almost immediately found to be suspect and, over time, both scientific research and public opinion have shifted away from criminalization and toward legalization.

At least one district court in this Circuit has expressed similar doubts about the constitutionality of 18 U.S.C. §922(g)(3) under *Bruen* in a case with nearly identical facts. *See United States v. Connelly*, No. EP-22-CR-229(2)-KC, 2022 WL 17829158 (W.D. Tex. December 21, 2022). In *Connelly*, police responded to a domestic disturbance call at Connelly's house. *See id.* at *1. They found several firearms and smelled marijuana. *See id.* A search turned up marijuana paraphernalia, and Connelly admitted she used marijuana regularly to help her sleep. *See id.* She was then indicted under 18 U.S.C. § 922(g)(3).

The district court felt compelled to rely on this Court's pre-*Bruen* jurisprudence, even though it noted that those cases are "light on detail" in their

---

[22]  *See* https://www.fda.gov/news-events/public-health-focus/fda-and-cannabis-research-and-drug-approval-process (last visited February 1, 2023).

historical analysis. *Connelly*, 2022 WL 17829158, at \*3. The district court reluctantly declined to find 18 U.S.C. §922(g)(3) unconstitutional but contended that *Bruen* could "present a suitable occasion to reconsider those precedents on appeal." *Id.* at \*3. The Court opined, that it "struggles to discern a historical justification for disarming a woman on the grounds that she allegedly committed a crime for which she would face little to no punishment," citing the Presidential pardon in effect. *Id.* at \*3.

The *Connelly* court was correct in its inclination to find § 922(g)(3) unconstitutional. Had the *Connelly* court had the benefit of this Court's *Rahimi* decision, the defense is certain that Connelly would be decided differently, and rightly so. The Government cannot meet its burden to identify any Founding-era regulation "distinctly similar" or even "relevantly similar" to Section 922(g)(3). Whether the Court considers a general prohibition on the possession of firearms by users of intoxicants or an analysis of the prohibitions on the possession of firearms by persons who possess or use marijuana, this is the "fairly straightforward" case where Mr. Daniels prevails. *See Bruen*, 142 S. Ct. at 2129–30.

**C.    18 U.S.C. § 922(g)(3) is unconstitutionally vague on its face and as applied to Mr. Daniels**

Mr. Daniels properly preserved his constitutional challenges to 18 U.S.C. § 922(g)(3), first by filing a Motion to Dismiss on July 21, 2022, and then by raising

the challenge in his motion for acquittal. Second Motion to Dismiss, ROA.78; Tr. Vol. II, ROA.244-45; Tr. Vol. III, 261.

### 1. On its face, 18 U.S.C. § 922(g)(3) is unconstitutional because it fails to define the term "unlawful user."

"The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.'" *Johnson v. United States*, 576 U.S. 591, 596-97 (2015) (quoting *Connally v. General Constr. Co.,* 269 U.S. 385, 391 (1926)). A statute is unconstitutionally vague if it includes "terms so vague that men of common intelligence must necessarily guess at its meaning." *Connally*, 269 U.S. at 391. As discussed below, § 922(g)(3), which prohibits an "unlawful user of a controlled substance" from possessing a firearm, is void for vagueness because Congress failed to fulfill its duty to "establish minimal guidelines to govern law enforcement." *Smith v. Goguen*, 415 U.S. 566, 574 (1974). As a result, the federal judiciary has spent the last two decades guessing at the meaning of the term "unlawful user."

### a. A facial challenge is proper.

Historically, courts have analyzed challenges for vagueness under the Fifth Amendment "as applied" to an individual defendant rather than assessing the facial validity of the statute. *See, e.g.*, *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); *Patterson*, 431 F. 3d at 836 (5th Cir. 2005). In this case, however, Supreme Court

precedent supports application of a facial challenge.

First, the Supreme Court has embraced a facially valid analysis "where the uncertainty induced by the statute threatens to inhibit the exercise of constitutionally protected rights." *Colautti v. Franklin*, 439 U.S. 379 (1979) (holding that an abortion-related law was unconstitutionally vague on its face); *see also Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416, 451 (1983) (same). 18 U.S.C. §922(g)(3) meets that requirement because it intrudes upon fundamental rights protected by the Second Amendment. *See Bruen*, 142 S. Ct. at 2122 (2022); *District of Columbia v. Heller*, 554 U.S. 570 (2008).

Second, recent Supreme Court jurisprudence establishes that a statute can be facially invalid when it suffers from "hopeless indeterminacy." *Johnson*, 576 U.S. at 598. In *Johnson*, the Court struck the residual clause from 18 U.S.C. §924(e), which allowed for a sentence enhancement for defendants convicted of being a felon in possession who also had three or more convictions for "serious drug offenses" or a "violent felony." *See id.* at 593-94, 602-06. The residual clause defined "violent felony," in part, to include a category of crimes that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* at 593-94 (quoting 18 U.S.C. § 924(e)(2)(B) (emphasis removed)). The Court conducted a facial validity analysis and concluded that the residual clause was unconstitutional because a consistent standard for evaluating the riskiness of "conduct that presents

a serious potential risk of physical injury" was elusive and, therefore, hopelessly indeterminate. *See id.* at 602.

Under *Johnson*, a litigant must no longer prove, to succeed on a facial challenge, that no set of facts exists that would be valid under the statute. *See id.* at 602-03. The Court noted that it had struck down statutes as being void for vagueness even though it was possible to imagine some circumstances in which the statute would be valid. *See id.* at 602-03 (finding "a law prohibiting grocers from charging an 'unjust and unreasonable rate' void for vagueness – even though charging someone a thousand dollars for a pound of sugar would surely be unjust and unreasonable" and striking a law "prohibiting people on sidewalks from 'conduct[ing] themselves in a manner annoying to persons passing by' – even through spitting in someone's face would surely be annoying.") Accordingly, "although statements in some of our opinions could be read to suggest otherwise, our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Johnson*, 576 U.S. at 602.

The unlawful user statute is similarly ripe for a facial challenge.[23]

---

[23] The defense notes that this Court has held, post-*Johnson*, "that a defendant whose conduct is clearly prohibited cannot be the one making that challenge." *United States v. Westbrooks*, 858 F.3d 317, 325 (5th Cir. 2017), *overruled on other grounds by Westbrooks v. United States*, 138 S. Ct. 1323 (2018). Notably, the Supreme Court's decision to overrule *Westbrooks* is based upon its decision in *Marinello v. United*

### b. Section 922(g)(3) is void on its face.

18 U.S.C. § 922(g)(3) makes it unlawful for anyone "who is an unlawful user or of addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))" to possess a firearm. Congress did not define the term "unlawful user" in the statute.

In determining whether the meaning of statutory language is plain or ambiguous, courts look to "the language [of the statute] itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 342 (1997) (*citing Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S.469, 477 (1992)). Generally, when examining statutory language, words are given their common usage. *See Smith v. United States*, 508 U.S. 223, 238 (1993). "Courts are not free to read into the language what is not there, but rather should apply the statute as written." *United States v. Murphy*, 35 F. 3d 143, 147 (4th Cir. 1994).

### (i)    The term "unlawful user" is unconstitutionally vague.

Section 922(g)(3) is unlike the other provisions of § 922(g), which include a specific triggering event such as a felony conviction or entry of a restraining order

---

*States*, 138 S. Ct. 1101, 1108-09 (2018), which discusses the importance of narrowly applying criminal statutes. As discussed in the analysis of the as-applied challenge, Mr. Daniels' conduct does not fall into the "clearly prohibited" category of conduct that would foreclose a facial challenge to the statute.

to provide context for the restriction on possession of a firearm. For example, §922(g)(4) does not merely prohibit "mental defectives" from possessing firearms. It requires an adjudication or formal commitment to trigger the prohibition. *See* 18 U.S.C. § 922(g)(4). While questions might be raised about what it means to be a "fugitive from justice" under § 922(g)(2), 18 U.S.C. § 921 provides a specific definition that can assist prosecutors, judges, and juries in evaluating individual cases. [24]

In § 922(g)(3), however, Congress failed to provide any context for who qualifies as an "unlawful user." No related statute provides a clarifying definition. The term has no common law or specialized meaning, and the ordinary meaning of the word "user" is particularly unhelpful. The dictionary definition of a user is "one that uses." https://www.merriam-webster.com/dictionary/user (last visited January 26, 2023). Black's Law Dictionary supplies a similar definition: "[s]omeone who uses a thing." Black's Law Dictionary (11th ed. 2019). "Determining what conduct is covered by § 922(g)(3), then, becomes an unconstitutional exercise in making "wholly subjective judgements without statutory definitions, narrowing context, or settled legal meanings." *United States v. Williams*, 553 U.S.285, 306 (2008). Cases from multiple jurisdictions prove this statement to be true.

---

[24] "The term 'fugitive from justice' means any person who has fled from any State to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding." 18 U.S.C. § 921(a)(15).

The District Court of Utah is one of the more recent courts to grapple with the ambiguities of § 922(g)(3). *See United States v. Morales-Lopez*, Case No. 2:20-cr-00027-JNP, 2022 WL 2355920 (D. Utah June 30, 2022). The district court in that case found the term "unlawful user" to be void for vagueness on its face, and Mr. Daniels urges the Court to adopt that court's reasoning here.

In *Morales-Lopez*, the Utah district court started with the language of the statute. She noted that "unlawful user could mean (1) ongoing, frequent, habitual drug use, or (2) someone who is presently under the influence of drugs." *See Morales-Lopez.* 2022 WL 2355920 at *8. The court dismissed the first option as being essentially synonymous with an addict, which is also prohibited under the statute, but the court also stated that the term "addict" must provide a line on the spectrum of substance use that is separate from an unlawful user.[25] *See id.* This

---

[25] Notably, there is a statutory definition of addict under the Controlled Substances Act that is also unhelpful and contradicts the language of § 922(g)(3). First, the statutory definition relies on an unstated and indeterminate description of addiction. 21 U.S.C. § 802(1) provides that "[t]he term 'addict' means any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs to have lost the power of self-control with reference to his addiction." The statutory definition includes "habitual" drug use that endangers public safety, health, welfare, or morals, which could encompass the regular, ongoing drug use applied by courts in interpreting the term unlawful user, discussed *infra*, causing additional confusion about the meaning of "unlawful user." Compounding this ambiguity further, the statutory definition of "addict" *applies* by its terms exclusively to "narcotic drugs," which 21 U.S.C. § 802(17) defines as a limited set of substances far narrower than the range of "controlled substances" referenced in § 922(g). It is unclear if the § 922(g)(3) firearm prohibition applies to those addicted to only narcotics or those

30

analysis is consistent with the rules of statutory interpretation because "unlawful user" and "addict" must hold different definitions. Otherwise, a reviewing court is unable to give meaning to each of the terms in the statute. *See Corley v. United States*, 556 U.S. 303, 314 (2009) (holding that "one of the most basic interpretive canons [is] that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant ....'" (citations and internal quotation marks omitted)).

After rejecting the "absurd" notion that § 922(g)(3) could apply to someone who has used a substance one time, the Utah court noted that "the covered conduct [for the definition of "unlawful user"] falls somewhere in the chasm between a single use and an addict." *Morales-Lopez*, 2022 WL 2355920 at *8. This wide disparity renders the term essentially useless.

Other courts have struggled with this definition as well. The Seventh Circuit deemed "unlawful user" synonymous with "habitual drug abuser," but offered no further clarification. *United States v. Yancey*, 621 F. 3d 681, 684 (7th Cir. 2010). The Ninth Circuit suggested a "common sense meaning of the phrase," failed to clarify what that might be, but concluded that it covered the defendant's conduct anyway. *United States, v. Ocegueda*, 564 F. 2d 1363, 1365-66 (9th Cir. 1977) (stating that defendant's heroin use was "consistent, prolonged, and

---

addicted to any controlled substance.

contemporaneous" with him buying a gun). *Ocegueda* suggested a definition in the negative by noting what would not fit a common sense meaning of the phrase: "[if the defendant] used a drug that may be used legally by laymen in some circumstances, or had his use of heroin been infrequent and in the distant past," he might not be liable under § 922(g)(3).[26] *Id.* at 1366. The Sixth Circuit defined an "unlawful user" as someone who "took drugs with regularity, over an extended period of time[.]" *United States v. Bowen*, 938 F. 3d 790, 793 (6th Cir. 2019). Without defining "regularity" or "extended period of time," the *Bowen* court held that the defendant's conduct qualified him as an unlawful user. *Id.* at 793-94.

> **(ii)     The statute does not include a temporal nexus between substance use and firearm possession, rendering §922(g)(3) unconstitutionally vague.**

These wide-ranging definitions of "unlawful user" also highlight the second constitutional flaw in 18 U.S.C. § 922(g)(3) – Congress' failure to include and define

---

[26] This example of what a court considers to *not* be unlawful merits discussion. It first notes that legal drugs, even though technically controlled substances, may not expose someone to criminal liability. This seems inconsistent with the statute because it does not differentiate between substances that are categorically prohibited and substances for which exceptions are made, including, in many states, marijuana. Second, the court notes that if the defendant's heroin use had been infrequent and in the distant past, criminal liability may not attach. How frequent is infrequent, and how far in the past does it have to be to qualify as "distant past?" Does a combat veteran who uses marijuana to treat Post Traumatic Stress Disorder once a month, qualify as a frequent or infrequent user? Does it matter if the veteran started medicating with marijuana last month, last year, or five years ago? What if she used marijuana 14 days ago and possesses a firearm?

the temporal nexus between being an "unlawful user" and the possession of a firearm. This failure renders § 922(g)(3) unconstitutionally vague on its face because without a temporal nexus, the statute would encompass anyone who ever used a controlled substance unlawfully. Such an interpretation would be overbroad to the point of absurdity. *See, e.g., United States v. Sanders*, 43 F. App'x 249, 257 (10th Cir. 2002) (holding that if an unlawful user was defined as "one who regularly, at reoccurring times, unlawfully uses a controlled substance," then "a defendant could acquire the status of a 'user' at the age of fifteen, forever halt the use of drugs at age sixteen, gain possession of a firearm at age sixty, and thus find him- or herself in violation of § 922(g)(3)".).

Congress' failure to include a temporal nexus also implicates the separation of powers principles. The Eighth Circuit noted almost twenty years ago that "courts generally agree the law [referencing § 922(g)(3)] runs the risk of being unconstitutionally vague *without a judicially-created temporal nexus* between the gun possession and regular drug use." *United States v Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003) (citation omitted) (emphasis added), *vacated on other grounds*, 543 U.S. 1099 (2005). The First Circuit recently concurred with the Eighth Circuit, holding that "the temporal limitation is necessary 'to avoid unconstitutional vagueness' in the statutory definition." *United States v. Espinoza-Roque*, 26 F. 4th 32, 35 (1st Cir. 2022) (citation omitted).

In the absence of language establishing a clear parameter for temporal proximity between usage and possession, courts have struggled to create a workable definition. The Utah district court collected a number of cases that examined the judicially-imposed temporal nexus requirement and found that, like the definition of "unlawful user," the conclusions varied widely and, rather than clearing up the confusion, contributed to it.

The Ninth Circuit used the terms "prolonged" but not "infrequent" use that was not "in the distant past," without defining any of those terms. *See Ocegueda*, 564 F.2d at 1366. The Eighth Circuit rejected the Ninth Circuit's requirement for use that occurred "regularly over an extended period" but did endorse jury instructions that defined "regular use" in the context of an "unlawful user" to mean that "[s]uch use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct." *United States v. Carnes*, 22 F. 4th 743, 749 (8th Cir. 2022).[27] The Seventh Circuit initially construed the statute to require "habitual" and "contemporaneous" use with possession. *Yancey*, 621 F.3d at 685-87. Ten years later, that same Court put forth a different definition, requiring that the defendant be "one who is engaged in regular

---

[27] This language formed the basis of the jury instruction that the district court gave to the jury in the instant case. Tr. Vol. III, ROA.271.

and ongoing use of a controlled substance" but not the requirement that the defendant be under the influence at the time of possession. *United States v. Cook*, 970 F.3d 866, 878-80 (7th Cir. 2020).

The Utah district court raised the same questions that are raised by the facts of this case. What constitutes contemporaneous possession and "unlawful user" status? "Does two weeks between drug use and gun possession constitute contemporaneous possession? Five weeks? Two months?" *Morales-Lopez*, 2022 WL 2355920 at *9.

These resulting vague and disparate definitions of "unlawful user" are exactly the sort of ambiguity that led the Supreme Court to find the residual clause in *Johnson* unconstitutional. Courts have been wrestling with this provision, inserting their own temporal nexus requirement into the statute to avoid declaring it unconstitutional, for two decades. There is absolutely no agreement about what specific time limit applies to constitute criminal conduct. As the Court held in *Johnson*,

[t]he clause has "created numerous splits among the lower federal courts," where it has proved nearly impossible to apply consistently. [citation omitted] The most telling feature of the lower courts' decisions is not division about whether the residual clause covers this or that crime (even clear laws produce close cases); it is, rather, pervasive disagreement about the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider.

576 U.S. at 601. That exact reasoning applies here.

35

Moreover, the Utah court opined correctly that the very existence of these temporal definitions illustrated the unconstitutionality of § 922(g)(3), insofar as they "run[] afoul of separation-of-powers principles." *Morales-Lopez*, 2022 WL 2355920 at *10.

> Even if this court were persuaded that judicial narrowing afforded the statute a more precise meaning that adequately put ordinary people on notice of its prohibitions, the statute presents a paradigmatic example of the legislature casting an overly broad net and leaving the judiciary to determine who stays in the net and who does not."

*See Kolender v. Lawson*, 461 U.S. 352, 358 n.7 (1983). Congress, not the court, defines what conduct is criminal and what is not, and when Congress fails to articulate clear standards for what conduct is criminal, the Court should not step into the shoes of the legislative branch and create those standards. Instead, the Court should declare the statute unconstitutional.

Because the Court's rationale in *Johnson* applies here and because the court's imposition of a temporal nexus into the statutes violates the separation of powers doctrine, this Court should hold that § 922(g)(3) is facially void for vagueness.

**2.  Section 922(g)(3) is void as applied to Mr. Daniels.**

The facts of this case highlight the fact that § 922(g)(3) is hopelessly indeterminate and, therefore, void as applied to Mr. Daniels. For purposes of this analysis, the defense will discuss the judicially-imposed temporal nexus cited in the court's instruction to the jury, even though that requirement violates the separation

of powers doctrine. The court gave the following instruction on the definition of "unlawful user of a controlled substance":

> The phrase "unlawful user of a controlled substance" means a person who uses a controlled substance in a manner other than as prescribed by a licensed physician. The defendant must have been actively engaged in use of a controlled substance during the time he possessed the firearm, but the law does not require that he used the controlled substance at the precise time he possessed the firearm. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct.

Tr. Vol. III, ROA.271. The defense objected to this instruction. Tr. Vol. III, ROA.259-60. This instruction also highlights the fact that § 922(g)(3) is vague as applied to Mr. Daniels.

The Government introduced evidence of the vestiges of old marijuana cigarettes, totaling less than one-half gram, that it recovered from the search of Mr. Daniels' truck at the time of the stop. Gov. Exhibit 28-29, ROA.466-69. Mr. Daniels also made post-*Miranda* statements, in which he admitted that he had started smoking marijuana in high school, that he had previously used marijuana approximately fourteen times per month (a vague statement), but it had been several weeks since he used marijuana. Gov. Exhibit 24-A, ROA.447-48. Mr. Daniels stated that he had stopped using while he was living with his girlfriend, and since moving out, he had been living in his truck and could not afford to use it anymore. *See id.* at ROA.447-48. As counsel noted in arguing the defense's motion for acquittal, the

Government could not provide a timeline for Mr. Daniels' last use of marijuana. The Government also did not submit any urinalysis or follicle testing to establish that Mr. Daniels' was actively using marijuana.

As the court noted in *Morales-Lopez*, the fact that the Government submitted no evidence of Mr. Morales-Lopez's drug use in the five weeks before his arrest, standing alone, was compelling evidence and was enough to support a ruling that § 922(g)(3) is vague as applied. *See Morales-Lopez*, 2022 WL 2355920 at *12.

The jury in this case was faced with nearly identical facts. The jury had no evidence that Mr. Daniels had marijuana in his system, nor did they have any evidence that showed recent use. All the jury could rely on to find ongoing use and to conclude that Mr. Daniels was an "unlawful user" were minute traces of marijuana that collectively totaled less than half-a-gram and Mr. Daniels' admission that he had been, in the past, a regular marijuana user.

The instruction given to the jury stated that they should consider the temporal nexus and that they needed to find "recent" and "active" use. The instruction suggests that there is no bright line test of days or weeks, but it begs the question: Is five weeks recent? Would six weeks be too far in the distant past? What if the jury has no evidence of the date of a defendant's last use? Because the evidence raises these questions, the statute is unconstitutionally vague as applied to Mr. Daniels.

The Supreme Court's commentary in *Marinello* is particularly compelling here. Criminal statutes must be construed narrowly and "with restraint in assessing the[ir] reach" because courts cannot assume "that the Government will 'use it responsibly.'" *Marinello,* 138 S. Ct at 1108-09. Mr. Daniels' case illustrates the Supreme Court's concerns about the devastating impact of broad or vague criminal statutes. But for the small amount of marijuana found in Mr. Daniels' truck, his possession of the two firearms would have been legal. The amount of marijuana at issue would have been, at most, a simple possession charge, a charge that is now fully and unconditionally pardoned by proclamation of the President of the United States.[28] The statute fails to provide clear and adequate notice that Mr. Daniels' conduct fell within the scope of the statute. As a result, Mr. Daniels is serving a 46-month sentence for conduct that may or may not be criminal. Section 922(g)(3), therefore, is unconstitutionally vague as applied to Mr. Daniels.

**D.      The evidence was insufficient to establish the elements the Government was required to prove under 18 U.S.C. § 922(g)(3).**

Mr. Daniels was indicted under 18 U.S.C. § 922(g)(3), which makes it unlawful "for any person – . . .  who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21

---

[28] *See* https://www.whitehouse.gov/briefing-room/presidential-actions/2022/10/06/granting-pardon-for-the-offense-of-simple-possession-of-marijuana/ (last visited January 27, 2023).

U.S.C. 802))" to possess a firearm. Pursuant to the jury instructions, the Government

was required to prove four elements beyond a reasonable doubt:

> First, that the defendant knowingly possessed a firearm; Second, that at the time the defendant possessed the firearm, the defendant was an unlawful user of a controlled substance; Third, the defendant knew he was an unlawful user of a controlled substance; And fourth, that the firearm possessed traveled in interstate or foreign commerce; . . . ."

Tr. Vol. III, ROA.270. The court also gave a jury instruction that defined "unlawful

user of a controlled substance" as

> a person who uses a controlled substance in a manner other than as prescribed by a licensed physician. The defendant must have been actively engaged in use of a controlled substance during the time he possessed the firearm, but the law does not require that he used the controlled substance at the precise time he possessed the firearm. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. An inference that a person was a user of a controlled substance may be drawn from the evidence of a pattern of use or possession of controlled substance that reasonably covers the time the firearm was possessed.

Tr. Vol. III, ROA.271. Under the *de novo* standard of review, the Government failed

to meet its burden on two of the four elements. *See Delgado*, 256 F.3d at 274.

### 1. The Government failed to prove beyond a reasonable doubt that Daniels was an unlawful user at the time he was in possession of the firearms.

The government did not establish beyond a reasonable doubt that Mr. Daniels

was an unlawful user of a controlled substance at the time he was in possession of

the firearms. Without waiving any objection to the constitutional challenge to §

922(g)(3), Mr. Daniels asserts that no rational juror could have found that he was an "unlawful user."

The evidence presented at trial established that Mr. Daniels had a history of smoking marijuana and was in possession of less than half-a-gram of marijuana of indeterminate age but had not used marijuana in an undetermined number of weeks. Gov. Exhibit 24-A, ROA.443-48. Mr. Daniels unequivocally stated he stopped smoking marijuana while he was living with his girlfriend and had continued to abstain from marijuana use after he started living in his truck. *See id.* at ROA.443-48. Neither the agent who testified nor the Government challenged the veracity of those statements. To the contrary, the Government introduced those statements as proof that Mr. Daniels was an unlawful user.

The Government failed to prove beyond a reasonable doubt, however, "that the unlawful use ha[d] occurred recently enough to indicate that the individual is actively engaged in such conduct." Tr. Vol. III, ROA.271. The Government failed to present any evidence that Mr. Daniels' past marijuana use could be construed as "active." The only conclusion that the jury could reach is that Mr. Daniels had not used marijuana in an unspecified number of weeks. Based on the evidence, Mr. Daniels stopped using marijuana weeks before the stop on April 25, 2022.

This Court has held that when "the evidence gives equal or nearly equal circumstantial support to a theory of guilt and to a theory of innocence, we will

reverse the conviction, as under these circumstances a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Hunt*, 129 F.3d 739, 742 (5th Cir. 1999) *(citing **United States v. Sanchez***, 961 F.2d 1169, 1173 (5th Cir. 1992)). In light of the jury instruction given and the facts presented at trial, whether Mr. Daniels was "actively engaged" in using marijuana is a toss-up question. Under the law, a tie goes to Mr. Daniels. Accordingly, this Court should hold that the evidence was insufficient to support the verdict and vacate the conviction.

## 2. The Government did not prove beyond a reasonable doubt that Daniels "knowingly" violated the provisions of 18 U.S.C. §922(g)(3).

The Government must not prove just that Mr. Daniels knowingly possessed a firearm. It must also prove that Mr. Daniels knew his status made it unlawful for him to possess a firearm. *See Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019) (holding that "[t]o convict a defendant, the Government must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it.")

*Rehaif* involved an alien who had entered the United States on a student visa but was dismissed from school for poor grades. *See id.* Rehaif subsequently went to a firing range and shot two firearms. The Government learned he was taking target practice and prosecuted him under 18 U.S.C. §922(g)(5) and §924(a)(2) as an alien unlawfully in the United States in possession of a firearm. *See id.* Rehaif argued that the jury was required to find that he knew he was in the country unlawfully. *See id.*

The Eleventh Circuit upheld his conviction on the basis that the Government did not need to prove knowledge of his status, and the Supreme Court reversed. *See Rehaif*, 139 S.Ct. at 2195. The Supreme Court held that *mens rea* is a requirement for prosecution under all the sections of §922(g) because "it helps to separate wrongful from innocent acts." *Id.* at 2197.

Mr. Daniels concedes that marijuana is currently an unlawful substance under federal law.[29] His possession of such a small amount of marijuana, however, is insufficient to confer "unlawful status," and it is unclear whether his decision to discontinue using marijuana, made weeks before he was found in possession of firearms, removes him from the class of substance users prohibited from firearms. As discussed in detail above, the vague and imprecise definition of an "unlawful user" matters because "[w]ithout knowledge of that status, the defendant may well lack the intent needed to make his behavior wrongful." *Rehaif*, 139 S.Ct. at 2197. "Congress did not intend to impose criminal liability on persons who, due to lack of knowledge, did not have a wrongful mental state." *Id.* at 2198. Federal courts across the country wrestle with the definition of "unlawful user" under 18 U.S.C. §922(g).

---

[29] Mr. Daniels notes, however, that both state and federal laws are unclear about whether simple possession and personal use of marijuana continue to be criminalized. As discussed below, the federal government has all but decriminalized the conduct at issue here.

Additionally, the agents who claim Mr. Daniels possessed marijuana on March 8, 2022, did not cite him or arrest him for that offense. Tr. Vol. II, ROA. 219, 222. When they arrested him at the traffic stop on April 25, 2022, they also did not cite him or arrest him for marijuana possession at that time. *See id.* at ROA.222. It is no surprise, then, that Mr. Daniels did not know he qualified as an unlawful user. The Government, then, must introduce evidence to prove that Mr. Daniels knew he was an unlawful user, not simply that he possessed and, in the past, used an unlawful substance. They failed to do so. Accordingly, the evidence is insufficient to support the conviction, and this Court should vacate his conviction.

# VI.    CONCLUSION

Based on the argument presented above, this Court should find that 18 U.S.C. § 922(g)(3) is unconstitutional as violative of the Second Amendment right to keep and bear arms. 18 U.S.C. § 922(g)(3) is also void for vagueness facially and as applied to Patrick Darnell Daniels, Jr. Additionally, there was insufficient evidence to prove that Patrick Darnell Daniels, Jr., is guilty beyond a reasonable doubt of the crime alleged. Mr. Daniels' conviction and sentence should be vacated and remanded to the district court for a judgment of acquittal.

Submitted this 3rd day of February, 2023.

**Omodare B. Jupiter**
Federal Public Defender

*s/ John W. Weber*
**John W. Weber, III**
Assistant Federal Public Defender
Southern District of Mississippi
2510 14th Street, Suite 902
Gulfport, MS 39501
Telephone: 228/865-1202
Fax: 228/867-1907
Email: john_weber@fd.org

Attorney for Defendant-Appellant

## <u>CERTIFICATE OF SERVICE</u>

I, John W. Weber, III, certify that on February 3, 2023, a copy of the Brief for Appellant was filed via this Court's electronic case filing system, which in turn forwarded electronic copies of the Brief to all counsel of record in this case. A copy of the Brief for Appellant was emailed directly to the government's lead counsel on the appeal of this case – erica.rose@usdoj.gov. Also, a copy of the Brief for Appellant has been mailed via U.S. Mail to Mr. Daniels at the Tallahatchie County Correctional Facility.

*s/ John W. Weber*
**John W. Weber, III**
Assistant Federal Public Defender

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(a)(7)(B)(iii), this document contains 10,492 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionately spaced typeface using Microsoft Word in 14-point font size and Times New Roman type style.

*s/ John W. Weber*
**John W. Weber, III**
Assistant Federal Public Defender