No. 22-60596

---

In the United States Court of Appeals for the Fifth Circuit

---

United States of America,

Plaintiff—Appellee,

v.

Patrick Darnell Daniels, Jr.,

Defendant—Appellant

---

Appeal from the United States District Court for the
Southern District of Mississippi; No. 1:22-cr-58

---

**Brief of *Amicus Curiae* Scholars of Second Amendment Law
and The Independence Institute in Support of
Defendant-Appellant Urging Reversal**

---

F. Lee Francis
Mississippi College School of Law
151 E. Griffith Street
Jackson, Mississippi 39201
(610) 925-7100

George A. Mocsary
University of Wyoming College of Law
1000 East University Avenue
Laramie, Wyoming 82701
(307) 766-5262

Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

No. 22-60596

---

In the United States Court of Appeals for the Fifth Circuit

---

United States of America,

Plaintiff—Appellee,

v.

Patrick Darnell Daniels, Jr.,

Defendant—Appellant

---

Appeal from the United States District Court for the
Southern District of Mississippi; No. 1:22-cr-58

---

### Certificate of Interested Persons

---

The undersigned counsel of record certifies that, in addition to the persons already certified by parties to this action, the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| *Amicus Curiae*: | The Independence Institute |
| | F. Lee Francis |
| | Nicholas J. Johnson |
| | Donald E.J. Kilmer |
| | David B. Kopel |
| | George A. Mocsary |
| | Joseph V. Muha |
| | Joseph E. Olson |
| | Glenn H. Reynolds |
| | |
| Counsel: | Flores Law PLLC |
| | Chad Flores |
| | |
| | F. Lee Francis |
| | George A. Mocsary |

s/ Chad Flores
_____

Chad Flores
Counsel for *Amicus Curiae*

# Table of Contents

**Page**

Certificate of Interested Persons ............................................................... i

Table of Contents .................................................................................... iii

Table of Authorities ................................................................................ iv

Interest of *Amicus Curiae* ..................................................................... vii

Summary of the Argument ...................................................................... 1

Argument ................................................................................................. 4

    I.    Historical precedent does not support prohibiting an individual's right to keep arms for prior intoxicant use. ...................... 4

    II.   Marijuana ...................................................................................... 7

        A.   Marijuana in the early Republic .................................................. 7

        B.   It is important to distinguish between general users of intoxicants and those who are actively intoxicated while using a firearm. ...................................................................... 8

Conclusion ............................................................................................... 11

Certificate of Compliance ....................................................................... 12

# Table of Authorities

**Page**

**Cases**

*Binderup v. Attorney Gen. United States,*
 836 F.3d 336 (3d Cir. 2016) ........................................................... 9

*Folajtar v. Attorney Gen. United States,*
 980 F.3d 897 (3d Cir. 2020) ........................................................... 9

*Kanter v. Barr,*
 919 F.3d 437 (7th Cir. 2019) ......................................................... 9

*New York State Rifle & Pistol Association, Inc. v. Bruen,*
 142 S.Ct. 2111 (2022) .......................................................... 2, 9, 10

*State v. Christen,*
 2021 WI 39 ................................................................................... 9

**Current Statutes & Regulations**

18 U.S.C. §922(g)(3) ............................................................... 1, 2

27 CFR § 478.11 ......................................................................... 1

**Historic Statutes & Regulations**

Pub. L. 75–238, 50 Stat. 551 (1937) ............................................. 8

1655 Va. Acts 401, Acts of March 10, 1655, Act XII ..................... 4

1665 N.Y. Laws 205 .................................................................... 5

Public Laws of the State of Rhode-Island, An Act to Regulate the Militia, §1
& §45 (1844) ............................................................................... 5

1 REVISED STATUTES OF THE STATE OF MISSOURI 854, ch. 47, § 3502
(Samuel C. Major et al. eds., 1889) ........................................................... 6

1 WILLIAM WALLER HENING, THE STATUTES AT LARGE; BEING A
COLLECTION OF ALL THE LAWS OF VIRGINIA, FROM THE FIRST SESSION OF
THE LEGISLATURE, IN THE YEAR 1619 (1823) ............................................. 4

GENERAL STATUTES OF THE STATE OF KANSAS 378, ch. 31, § 282 (John M.
Price et al. eds., 1868) ............................................................................... 5

REVISED CODE OF THE STATUTE OF LAWS OF THE STATE OF MISSISSIPPI 776,
ch. 77, § 2986 (J.A.P. Campbell ed., 1880) ............................................... 6

STATUTES OF OKLAHOMA 1890 495, ch. 25, art. 47, § 4 (Will T. Little et al.
eds., 1891) ................................................................................................ 6

SUPPLEMENT TO THE REVISED STATUTES OF WISCONSIN 848, ch. 181, §
4397b(3) (A. L. Sanborn & J. R. Berryman eds., 1883) ........................ 5, 6

## Other Authorities

*Extract from Sonnini's Travels in Egypt, Respecting the Use of a Preparation of
Hemp, as a Narcotic*, FARMER'S MUSEUM, OR LITERARY GAZETTE, May 26,
1801   ................................................................................................... 7, 8

F. Lee Francis, *Armed and Under the Influence: The Second Amendment and the
Intoxicant Rule After* Bruen, 107 MARQ. L. REV. (forthcoming
2024) ................................................................................................ 9, 10

*Intoxicating Quality of Hemp*, CHARLESTON COURIER, May 20, 1803 ...................... 8

Joseph Greenlee, *The Historical Justification for Prohibiting Dangerous Persons
from Possessing Arms*, 20 WYO L. REV. 249 (2020) ................................... 10

Thomas Paine, COMMON SENSE (1776), *in* 1 THE WRITINGS OF THOMAS
PAINE (Moncure Daniel Conway ed. 1894) ............................................... 7

*Sketches of India*, CHARLESTON MERCURY, Dec. 8, 1825 ......................................... 8

3 C.S. Sonnini, TRAVELS IN UPPER AND LOWER EGYPT UNDERTAKEN BY ORDER OF THE OLD GOVERNMENT OF FRANCE (Henry Hunter trans., new ed. 1807) (1799) ....................................................................... 7

Ann E. Tweedy, *Hostile Indian Tribes . . . Outlaws, Wolves, . . . Bears . . . Grizzlies and Things Like That? How the Second Amendment and Supreme Court Precedent Target Tribal Self-Defense*, 13 U. PA. J. CONST. L. 687, 698 (2011) ....................................................................... 4

## Identify and Interest of *Amicus Curiae*

*Amicus Curiae* are scholars of Second Amendment Law and The Independence Institute. They submit this brief in accordance with the Court's directive of June 7, 2023, which "invites briefs from amici curiae who wish to supply relevant information regarding the history and tradition of restrictions on the use and possession of firearms as pertinent to the issues presented in this case."

**Amici professors** are law professors who teach and write on the Second Amendment: F. Lee Francis (Mississippi College), Nicholas J. Johnson (Fordham), Donald E.J. Kilmer (Lincoln), David B. Kopel (Independence Institute), George A. Mocsary (Wyoming), Joseph V. Muha (Akron), Joseph E. Olson (Mitchell Hamline), and Glenn H. Reynolds (Tennessee). They were cited by the Supreme Court in *District of Columbia v. Heller*, *McDonald v. Chicago*, and *New York State Rifle & Pistol Association v. Bruen*. Oft-cited by lower courts as well, these professors include authors of the first law school textbook on the Second Amendment, and many other books and law review articles on the subject.

**F. Lee Francis** is an Assistant Professor of Law at Mississippi College School of Law. His most recent article entitled, *Armed and Under the Influence: The Second Amendment and the Intoxicant Rule After Bruen* is forthcoming in the Marquette Law Review.

**Nicholas J. Johnson** is a Professor of Law at Fordham University, School of Law. He is co-author of the first law school textbook on the Second Amendment, FIREARMS LAW AND THE SECOND AMENDMENT: REGULATION, RIGHTS, AND POLICY (Aspen Pub. 3d ed. 2021) (with David B. Kopel, George A. Mocsary, E. Gregory Wallace, and Donald Kilmer). The casebook has been cited by majorities in *People v. Chairez* (Supreme Court of Illinois) and *Grace v. District of Columbia* (D.C. Cir.), and by dissents in *Drake v. Filko* (3d Cir.) and *Heller II* (D.C. Cir.). Professor Johnson is also author of NEGROES AND THE GUN: THE BLACK TRADITION OF ARMS (2014). His articles on the right to arms have been published by the *Hastings Law Review*, *Ohio State Law Journal*, and *Wake Forest Law Review*. Other courts citing his right to arms scholarship include the Seventh Circuit, Eastern District of New York, and Washington Court of Appeals.

**Donald E.J. Kilmer, Jr.** is a Professor of Constitutional Law at Lincoln University Law School, where his courses include Second Amendment and Firearms Law. His analysis of post-Heller litigation was published in a symposium of the *Georgetown Journal of Law & Public Policy*. He is co-author of the third edition of the textbook FIREARMS LAW AND THE SECOND AMENDMENT, described above.

**George A. Mocsary** is a Professor of Law at the University of Wyoming College of Law. He is co-author of FIREARMS LAW AND THE SECOND AMENDMENT,

described above. His firearms-law articles have appeared in the *George Mason Law Review*, *Connecticut Law Review*, and *Duke Law Journal Online*. His Second Amendment scholarship was cited in *McDonald v. Chicago*, and in the Fourth and Seventh Circuits.

**Joseph V. Muha** is an Adjunct Professor at The University of Akron Law School, where his course covers the Second Amendment and Ohio's Firearms Law. His scholarship includes law journal articles on the Constitution as well as 3D Printing and Firearms. Professor Muha is a certified pistol instructor.

**Joseph E. Olson** is an emeritus Professor of Law at Mitchell Hamline School of Law, where he taught Second Amendment, business law, and tax law. His scholarship on the right to arms was cited by *District of Columbia v. Heller*, and also by the Ninth Circuit, Eastern District of New York, and Washington Supreme Court. His articles on the right have appeared in the *Stanford Law and Policy Review*, *Georgetown Journal of Law & Public Policy*, and *Michigan Journal of Law Reform*.

**Glenn H. Reynolds** is the Beauchamp Brogan Distinguished Professor of Law at the University of Tennessee College of Law, where he teaches constitutional law and technology law. His constitutional scholarship has been published in the *Columbia Law Review*, *Virginia Law Review*, *University of Pennsylvania Law Review*, *Wisconsin Law Review*, and *Northwestern University Law Review*. The Seventh Circuit

cited his scholarship as a model of "originalist interpretive method as applied to the Second Amendment." *Ezell v. City of Chicago*, 651 F.3d 684, 699 n.11 (7th Cir. 2011). In addition, his right to arms scholarship has been cited by the First, Third, Fourth, Fifth, Seventh, Eighth, and Ninth Circuits; by federal district courts in Wisconsin, Illinois, and Texas; and by the Supreme Courts of Kentucky and Oregon.

**Independence Institute** is the nation's second-oldest state level think tank, founded in 1985 on the eternal truths of the Declaration of Independence. The scholarship and amicus briefs of the Institute's Research Director, David B. Kopel, and of the Institute's Senior Fellow in Constitutional Jurisprudence, Robert G. Natelson, have been cited in nine U.S. Supreme Court cases, by Justices Alito, Breyer, Kagan, Roberts, Stevens, and Thomas, and also by then-Judges Gorsuch and Kavanaugh. In this Circuit, Kopel has been cited in *United States v. Rahimi*, 61 F.4th 443, 460 n.11 (5th Cir. 2023) and *United States v. Gonzalez*, 792 F.3d 534, 536 (5th Cir. 2015).

*    *    *

No party or a party's counsel authored this brief in whole or in part. No one other than the amicus curiae, its members, or its counsel contributed money that was intended to fund preparing or submitting the brief.

## Summary of the Argument

This brief addresses the constitutionality of 18 U.S.C. §922(g)(3) as applied to marijuana users.[1]

In pre-1900 America, laws forbade carrying or shooting firearms while intoxicated, and properly so.[2] Laws did not forbid sober people from using firearms merely because some people chose to become intoxicated at times when they are not using firearms.

People have misused weapons while intoxicated with alcohol throughout recorded history. This has been no less true throughout American history. In the American legal tradition, people who misuse firearms while under the influence of alcohol were punished. People who safely wear or shoot firearms at certain times and safely use intoxicating alcohol at different times were not.

As applied to marijuana, *Bruen* does not support an exception to this American legal tradition. The Supreme Court explained that, if a law burdens an individual's Second Amendment right, the Government must prove that the statute at issue

---

[1] This brief takes a position only with respect to "unlawful user[s] of" marijuana; the analysis may be different for "unlawful user[s] of" cocaine, opiates, or other controlled substances, or to those "addicted to any controlled substance." 18 U.S.C. §922(g)(3); *see* 27 C.F.R. § 478.11 (referring to a person who "has lost the power of self-control with reference to the use of [a] controlled substance").

[2] This brief provides a representative but not comprehensive survey of historic laws involving alcohol and firearms. Some additional laws, similar to those discussed in this brief, are described in the Firearms Policy Coalition amicus brief.

comports with the history and tradition of the Second Amendment. *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2129-30 (2022) ("We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment′s plain text covers an individual′s conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation′s historical tradition of firearm regulation. Only then may a court conclude that the individual′s conduct falls outside the Second Amendment′s 'unqualified command.'").

Furthermore, *Bruen* explains that not every remotely analogous law should be upheld, if the effect produces a constricted "right" that would be contrary to the Founders' expectations. *Id*. ("[C]ourts should not 'uphold every modern law that remotely resembles a historical analogue,' because doing so 'risk[s] endorsing outliers that our ancestors would never have accepted.'"). As explained below, 18 U.S.C. §922(g)(3) extends beyond what *Bruen* permits.

The use of marijuana as an intoxicant is as old as the Republic. *Bruen* provides that legal analogies may have to be "more nuanced" when addressing "new technologies" or new social problems. Marijuana, unlike some synthetic drugs, is not a "new technology."

It is inconsistent to make marijuana use a disqualifier for firearm possession while allowing possession for alcohol use. It is important to distinguish between being a marijuana or alcohol user *generally* versus carrying or shooting a firearm *while* being intoxicated.   It is no more constitutional to ban firearm ownership for marijuana users who wear or fire their arms only when sober than it would be to ban firearms possession for alcohol users who wear or fire their arms only when sober. In accord with the broader, long-time understanding that dangerousness is the proper arms disqualifier, there is a presumption that firearm carriage or discharge while intoxicated, whatever the intoxication's source, is dangerous, and therefore not protected by the Second Amendment.

**Argument**

## I. Historical precedent does not support prohibiting an individual's right to keep arms for prior intoxicant use.

Since colonial days, American laws about arms and intoxication forbade misuse. Teetotalers and heavy drinkers were treated alike: firearm misuse by either was illegal, and proper arms use while sober was lawful.

The first law was passed in 1655, when Virginia colony prohibited any person from "shoot[ing] any guns at drinking (marriages and funerals only excepted) that such person or persons so offending shall forfeit 100 lb. of tobacco." 1655 Va. Acts 401, Acts of March 10, 1655, Act XII. The law was enacted because gunfire was the alarm for Indian attack, "of which no certainty can be had in respect of the frequent shooting of guns in drinking." 1 WILLIAM WALLER HENING, THE STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA, FROM THE FIRST SESSION OF THE LEGISLATURE, IN THE YEAR 1619, at 401 (1823); Ann E. Tweedy, *Hostile Indian Tribes ... Outlaws, Wolves, ... Bears ... Grizzlies and Things Like That? How the Second Amendment and Supreme Court Precedent Target Tribal Self-Defense*, 13 U. PA. J. CONST. L. 687, 698 (2011) (noting that Virginia passed its statute to prevent false alarms of Indian attack). Notably, the law did not even prohibit firearm carriage while drinking; it only prohibited firearm *discharge*.

Preventing accidental injuries was another reason for prohibiting shooting while intoxicated. By order of the Director of the New Netherland Colony, "Whereas experience hath demonstrated and taught that . . . much Drunkenness and other insolence prevail on New Year's and May Days, by firing of guns, . . . [leading] to deplorable accidents such as wounding, . . . the director General . . . expressly forbids from this time forth all firing of Guns." Ordinance of the Director General and Council of New Netherland to Prevent Firing of Guns, 1665 N.Y. Laws 205.

An 1844 Rhode Island statute regulating the militia prohibited "common drunkards"—alcohol *addicts*, *cf. supra* n.1—from required militia service. Public Laws of the State of Rhode-Island, An Act to Regulate the Militia, §1 & §45 (1844) ("Every able bodied . . . citizen in this state . . . [between] the age[s] of eighteen year[s] and . . . forty-five years, excepting . . . common drunkards . . . shall be enrolled in the militia.").

In the last third of the nineteenth century, three states and one territory outlawed arms carrying while intoxicated: Kansas (1868), Wisconsin (1883, handguns), and Missouri (1889). *See* GENERAL STATUTES OF THE STATE OF KANSAS 378, ch. 31, § 282 (John M. Price et al. eds., 1868) ("[A]ny person under the influence of intoxicating drink . . . carrying on his person a pistol . . . or other deadly weapon, shall be subject to arrest upon charge of misdemeanor[.]"); SUPPLEMENT

TO THE REVISED STATUTES OF WISCONSIN 848, ch. 181, § 4397b(3) (A. L. Sanborn & J. R. Berryman eds., 1883) ("It shall be unlawful for any person in a state of intoxication to go armed with any pistol or revolver."); 1 REVISED STATUTES OF THE STATE OF MISSOURI 854, ch. 47, § 3502 (Samuel C. Major et al. eds., 1889) ("If any person . . . shall have or carry any [deadly or dangerous weapon] upon or about his person when intoxicated, or under the influence of intoxicating drinks . . . shall, upon conviction, be punish by a fine ... or by imprisonment[.]").

More narrowly, the Oklahoma territory prohibited "any public officer" from "carrying" certain specified arms, including a pistol or revolver, "while under the influence of intoxicating drinks." STATUTES OF OKLAHOMA 1890 495, ch. 25, art. 47, § 4 (Will T. Little et al. eds., 1891).

Mississippi (1880) outlawed selling a firearm to an intoxicated person. REVISED CODE OF THE STATUTE OF LAWS OF THE STATE OF MISSISSIPPI 776, ch. 77, § 2986 (J.A.P. Campbell ed., 1880) ("It shall not be lawful for any person to sell to any . . . person intoxicated, knowing him to be . . . in a state of intoxication" any concealable, deadly weapon.).

In short, several laws before 1900 addressed problems of firearms misuse by intoxicated persons. No laws banned sober use of firearms by persons who chose to become intoxicated when not carrying or shooting firearms.

## II. Marijuana.

### A. Marijuana in the early Republic.

The hemp plant was as abundant at the Founding as were small arms. THOMAS PAINE, COMMON SENSE (1776), *in* THE WRITINGS OF THOMAS PAINE 106 (Moncure Daniel Conway ed. 1894) ("In almost every article of defence we abound. Hemp flourishes even to rankness, so that we need not want cordage. . . . Our small arms equal to any in the world.").

Some Americans read about people in other nations using hemp as an intoxicant.[3]  As part of the famous French scientific expedition to Egypt under Napoleon, renowned botanist Charles-Nicolas-Sigisbert Sonnini de Manoncourt reported about hemp: "For want of intoxicating liquors, the Arabs and the Egyptians compose several preparations from this plant, with which they procure for themselves a sort of pleasing drunkenness, a state of reverie which inspires gaiety, and produces agreeable dreams."  C.S. SONNINI, TRAVELS IN UPPER AND LOWER EGYPT UNDERTAKEN BY ORDER OF THE OLD GOVERNMENT OF FRANCE 92 (Henry Hunter trans., new ed. 1807) (1799).  American newspaper articles headlined the report that hemp can be intoxicating.  *See Extract from Sonnini's Travels in Egypt,*

---

[3] This brief's use of the term "hemp" is primarily for historical parity and accuracy. Marijuana and Cannabis are not terms that the founding generation used. For the founding generation, hemp could be smoked as an intoxicant. Therefore, hemp should be understood as tantamount to marijuana.

*Respecting the Use of a Preparation of Hemp, as a Narcotic*, FARMERS' MUSEUM, OR LITERARY GAZETTE, May 26, 1801, at 4 (same quote); *Intoxicating Quality of Hemp*, CHARLESTON COURIER, May 20, 1803, at 2 (same).

Egypt, American media reported, was not the only place where hemp was used as an intoxicant. *See Sketches of India*, CHARLESTON MERCURY, Dec. 8, 1825, at 1 (hemp leaves as intoxicants).

Perhaps some early Americans used hemp as an intoxicant, and perhaps some did so after reading about its use in other lands. In any case, no American statutes were passed against hemp. Marijuana prohibition did not start in the United States until The Marihuana Tax Act of 1937. Pub. L. 75–238, 50 Stat. 551 (1937).

Alcohol, on the other hand, was identified early as a social scourge. Maine enacted the first alcohol prohibition law in 1846. More and more States followed, eventually leading to the enactment of the Nineteenth Amendment in 1919. Notably, not one State that prohibited its residents from consuming alcohol forbade firearms possession by a resident who drank unlawfully.

### B. It is important to distinguish between general users of intoxicants and those who are actively intoxicated while using a firearm.

Mr. Daniels was an admitted user of marijuana. Appellant Br. 17. But the Government presented no evidence proving that Mr. Daniels was, at the time he possessed the firearm, intoxicated or actively using an intoxicant. Appellant Br. 18.

The distinction between being a marijuana or alcohol user *generally*, and using a firearm *while* being intoxicated is essential. As described in Part I, American statutes before 1900 distinguished between persons who use intoxicants and persons who go armed while actually intoxicated; expressly, the laws restricted only the latter's right to wear or discharge firearms.

Statutes criminalizing active intoxication are premised on the notion that dangerousness is heightened when one carries or shoots a firearm while intoxicated. *See State v. Christen*, 2021 WI 39, 81 (Hagedorn, J., concurring) ("[T]he unique danger of intoxication when combined with potentially deadly force has long been acknowledged.").[4] Absent intoxication, dangerousness is at its lowest ebb. Dangerousness should be the key feature for firearms prohibitors, and a person whose conduct is never dangerous may not be disarmed. *See Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019); *Folajtar v. Attorney Gen. United States*, 980 F.3d 897, 915–20 (3d Cir. 2020); *Binderup v. Attorney Gen. United States*, 836 F.3d 336, 357 (3d Cir. 2016); F. Lee Francis, *Armed and Under the Influence: The Second Amendment and the Intoxicant Rule After Bruen*, 107 MARQ. L. REV. (forthcoming 2024) ("A proper

---

[4] *State v. Christen* employed the two-step interest balancing test that later was rejected by the Supreme Court. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2125 (2022) ("Despite the popularity of this two-step approach, it is one step too many. Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history . . . *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context.").

showing of dangerousness requires evidence separate from past intoxicant use. . . . The relevant inquiry centers on illicit use and imminent danger."); Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 WYO. L. REV. 249, 275–83 (2020).

Mr. Daniels has no violent criminal history. Appellant Br. 25. Restricting an individual's right to keep arms absent a showing of dangerousness fails to comport with the history and tradition of the Second Amendment.[5] If dangerousness is best evidenced by past violent or threatening conduct or active intoxication, then the case against Mr. Daniels must fail.

---

[5] *Bruen*, 142 S. Ct. at 2125 ("We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'").

## Conclusion

This Court should reverse the district court's judgment and direct entry of judgment for Mr. Daniels.

Respectfully submitted,

By /s/ *Chad Flores*
Chad Flores
cf@chadfloreslaw.com
State Bar No. 24059759
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

F. Lee Francis
lfrancis@mc.edu
Mississippi College School of Law
151 E. Griffith Street
Jackson, Mississippi 39201
(610) 925-7100

George A. Mocsary
gmocsary@uwyo.edu
University of Wyoming College of Law
1000 East University Avenue
Laramie, Wyoming 82701
(307) 766-5262

## Certificate of Compliance

This filing complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 2,828 not-exempted words.

This filing complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32 and Fifth Circuit Rule 32 because it has been prepared in a proportionally spaced typeface using Microsoft Word for Mac Version 16.74 in 14-point font.

/s/ Chad Flores
Chad Flores