## No. 22-60596

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
PLAINTIFF – APPELLEE,

V.

PATRICK DARNELL DANIELS, JR.
DEFENDANT – APPELLANT.

———————————

**BRIEF OF *AMICUS CURIAE***
**THE NATIONAL ORGANIZATION FOR THE REFORM OF**
**MARIJUANA LAWS (NORML), SUPPLYING REQUESTED**
**INFORMATION REGARDING THE HISTORY, TRADITION AND**
**RESTRICTIONS ON THE USE AND POSSESSION OF FIREARMS**
**APPLICABLE TO INTOXICATED OR IMPAIRED INDIVIDUALS**

———————————

Gerald H. Goldstein, Esq.
*Counsel of Record*
Goldstein & Orr
29th Floor Tower Life Building
310 S. St. Mary's Street
San Antonio, TX 78205
(210) 226-1463
gerrygoldsteinlaw@gmail.com

David Holland
*Author; Co-Chair, NORML*
*Amicus Committee*
Prince Lobel Tye LLP
41 Madison Avenue, Suite 3100
New York, New York 10016
(212) 842-2480
DHolland@PrinceLobel.com

Joseph A. Bondy
*Co-Chair, NORML Amicus*
*Committee*
Law Offices of Joseph A. Bondy
1776 Broadway, Suite 2000
New York, New York 10019
(212) 219-3572
josephbondy@mac.com

*Attorneys for Amicus Curiae NORML*

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 29(a)(4), amicus curiae, The National Organization for the Reform of Marijuana Laws ("NORML") is a non-profit corporation and does not have any parent corporations.  NORML is not a publicly held corporation, does not issue stock, and has no parent corporation.

## STATEMENT OF IDENTITY, INTEREST OF AMICUS CURIAE

NORML's mission is to move public opinion sufficiently to legalize the responsible use of marijuana by adults, and to serve as an advocate for consumers to assure they have access to high quality marijuana that is safe, convenient, and affordable.[1] NORML does not have any interest in the outcome of this matter.

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Fifth Circuit

---

[1] In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), no counsel for a party authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation or submission of this brief.  No person other than the amicus curiae, or its counsel, made a monetary contribution intended to fund its preparation or submission.

Court of Appeals Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

1. Patrick Darnell Daniels, Jr., Defendant-Appellant;

2. Darren J. LaMarca, United States Attorney, Southern District of Mississippi, Jackson, Mississippi;

3. Erica L. Rose, Assistant United States Attorney, Southern District of Mississippi, Gulfport, Mississippi;

4. Jonathan David Buckner, Assistant United States Attorney, Southern District of Mississippi, Gulfport, Mississippi;

5. Omodare B. Jupiter, Federal Public Defender, Northern and Southern Districts of Mississippi, Jackson, Mississippi;

6. John W. Weber, III, Assistant Federal Public Defender, Southern District of Mississippi, Gulfport, Mississippi; and

7. Honorable Louis Guirola, Jr., United States District Judge, Gulfport, Mississippi.


 Gerald H. Goldstein

Gerald H. Goldstein
*Attorney of record,*
*Chair, NORML*
*National Legal Committee*

## **STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Rule 34(a)(1) of the Federal Rules of Appellate Procedure and Fifth Circuit Local Rule 28.2.3 Amicus Curiae do not seek oral argument in this matter unless requested by the Court.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

DISCLOSURE STATEMENT                                                     i

STATEMENT OF IDENTITY, INTEREST OF AMICUS CURIAE         i

CERTIFICATE OF INTERESTED PARTIES                                i

STATEMENT REGARDING ORAL ARGUMENT                          iii

JURISDICTIONAL STATEMENT                                            1

STATEMENT OF ISSUES PRESENTED                                    2

SUMMARY OF ARGUMENT                                                 2

ARGUMENT                                                                     4

| | | |
|---|---|---|
| I. | THE *BRUEN* HISTORICAL ANALYSIS TEST | 5 |
| II. | THE ROOTS OF CANNABIS IN AMERICA | 8 |
| III. | CANNABIS IS MORE HISTORICALLY AMERICAN THAN APPLE PIE | 10 |
| IV. | THE RISE OF RACISM AND PROHIBITION | 13 |
| V. | WAR ON PEOPLE OF COLOR REBRANDED AS WAR ON DRUGS | 14 |
| VI. | CONGRESS ACTIVELY PROMOTES MEDICAL CANNABIS | 15 |
| VII. | THERE WAS NO IMPINGEMENT OF 2ND AMENDMENT RIGHTS DUE TO CANNABIS IN 1791 OR 1868 | 17 |

NORML's POSITION IS CONSTITUTIONAL                             19

CONCLUSION                                                                   21

# TABLE OF AUTHORITIES

Page

**United States Supreme Court**

*District of Columbia v. Heller*, 554 U.S. 570 (2008)    4

*Gonzales v. Raich*, 545 U.S. 1 (2005)    16

*Konigsberg v. State Bar of Cal.*, 366 U.S. 36 (1961)    6

*New York State Rifle & Pistol Association, Inc., v. Bruen,*    passim
U.S. -,142 S.Ct. 2111, 213 L.Ed.2d 387 (2022)

*Standing Akimbo, LLC. V. U.S.*, 141 U.S. 2236 (2021)    9

**United States Court of Appeals**

*Mai v. United States,* 952 F.3d 1106 (9th Cir. 2020)    4

*Tyler v. Hillsdale County,* 837 F.3d 678 (6th Cir. 2016)    4

*United States v. Bilodeau,* 24 F.4th 705, 714 (1st Cir. 2022)    9

*United States v. Harrison,* 22-cr-00328-PRW (W.D. Ok.).    6,7, 19
Dkt. 36, 2/3/23

*United States v. Jimenez-Shilon,* 34 F.4th 1042 (11th Cir. 2022)    4

*United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016)                    9

**State Courts**

*State v. Weber*, 168 N.E.3d 468 (Ohio 2020)                    19

**United States Constitution**

U.S. Constitution, 2nd Amendment                    *passim*

U.S. Constitution, 14th Amendment                    *passim*

**Statutes**

Controlled Substances Act of 1970, 21 U.S.C. 801, et. seq.                    *passim*

18 U.S.C. section 922(g)                    *passim*

**Other Authorities**

Agriculture Improvement Act, P.L. 115-334 (2018)                    10

Compassionate Use Act, California State Legislature, Health
and Safety Code, Division 10, Chapter 6, Article 2, 11362.5 (1996)                    15

Florida Medical Marijuana Legalization Initiative (Amendment 2),                    16
Article X, Section 29 (2016)

Gun Control Act, P.L. 90-618 (1968)                    4

Marihuana Tax Act, P.L. 75-238 (1937)                    *passim*

Rohbacher-Farr Spending Appropriations Amendment,                    16
114th U.S. Congress, H. Amdt. 332 to H.R. 2578 (2015)

## **JURISDICTIONAL STATEMENT**

This Court has jurisdiction over the underlying appeal pursuant to 28 U.S.C. § 1291. The appeal arose from a final order of the district court sentencing Defendant/Appellant Daniels, following a trial, to 46 months in prison for violating 18 U.S.C. § 922(g)(3), which makes it a crime for an unlawful user of a controlled substance, as defined in Title 21, United States Code, Section 802, to knowingly possessing a firearm which was in and affecting interstate and foreign commerce. Judgment, ROA.133. Mr. Daniels filed a timely Notice of Appeal pursuant to Rule 4(b)(1)(A) of the Federal Rules of Appellate Procedure. Notice of Appeal, ROA.141.

Jurisdiction is vested in this Court under 28 U.S.C. § 1291.

On June 7, 2023, the Court entered an Order inviting amicus participation herein:

> The court invites briefs from amici curiae who wish to supply relevant information regarding the history and tradition of restriction on the use and possession of firearms as pertinent to the issues presented in this case. Of particular interest are historical gun regulations applicable to intoxicated or impaired individuals. Such briefs must be filed by July 6, 2023 (regardless of any time limitations set by rule).

Accordingly, the National Organization for the Reform of Marijuana Laws (NORML) submits the instant amicus curiae brief to provide the Court with the requested and relevant historical information.

## STATEMENT OF ISSUES PRESENTED

In accordance with <u>Fed. R. App. P. 28</u> (a)(5), and as framed in the request of the Fifth Circuit Court of Appeals, the issue presented is whether there are historic analogues which permitted government encroachment upon the Second Amendment right to bear arms based upon intoxication or impairment.

There are simply no historical analogues that would be permissible under *New York State Rifle & Pistol Association, Inc., v. Bruen*, - U.S. -,<u>142 S.Ct. 2111</u>, <u>213 L.Ed.2d 387</u> (2022), which would allow the federal government to punish and completely deprive an entire class of individuals of the right to bear arms based solely upon cannabis consumption and not just during the period of time of actual intoxication or impairment.

## SUMMARY OF ARGUMENT

"My country 'tis of weed" – this lyrical parody is not intended to offend the Court, but to prove up that it is actually a truism. Cannabis and its usage are deeply rooted in American history. From the founding of the Virginia

colony in 1609, when colonists were required by the King to grow it, to its prohibition in 1937 with the passage of the federal Marihuana Tax Act, America was the world's largest producer and exporter of cannabis and its byproducts. Cannabis, as a medicine, a textile fabric, and food source, among myriad other applications, is a key ingredient to our nation's history and viability. Agriculturally, cannabis was a significant contributor to the economic stability and hegemony of the colonies, and later the United States, on a global scale, for hundreds of years.

Neither the Founding Fathers, many of whom were cultivators and consumers of cannabis, who drafted and ratified of the Second Amendment in 1791, nor their legislative successors, who drafted and ratified the Fourteenth Amendment in 1868, took measures to restrict the constitutional right to bear arms due to the consumption of cannabis. Instead, legislative encroachment on the Second Amendment was attributable to intoxication and impairment from any substance for that period of time of actual intoxication and/or impairment, not the type of intoxicant consumed.

As explained herein, the blanket prohibition against cannabis consumption across a class of people under 18 U.S.C. 922(g)(3), rather than the time period of an individual's cannabis intoxication, does not pass muster under *New York State Rifle & Pistol Association, Inc., v. Bruen*, -

U.S. -,142 S.Ct. 2111, 213 L.Ed.2d 387 (2022). Therefore, the statute should be declared unconstitutional.

## ARGUMENT

The Second Amendment guarantees individuals the right to carry and bear arms which shall not be infringed. *See, U.S. Constitution, Amend. II*. That amendment "codifie[s] a pre-existing right" (*Dist. of Columbia v. Heller*, 554 U.S 570, 592 (2008)), which is a "guarantee...which we inherited from our English ancestors." *See*, *U.S. v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022). That right is not absolute. Certain classes of individuals based upon prior criminal conduct and mental infirmity may be deprived of that right by laws such as 18 U.S.C. 922(g).[2]   Congress asserted that the purpose in enacting the Gun Control Act of 1968 was to prevent crime by keeping "firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency."[3]

For the sake of argument, intoxication and impairment by any substance can make the consumer temporarily incompetent to possess and

---

[2] See, e.g., *Tyler v. Hillsdale County*, 837 F.3d 678 (6th Cir. 2016) and *Mai v. United States*, 952 F.3d 1106 (9th Cir. 2020) where Courts differed on whether individuals previously involuntarily institutionalized in psychiatric facilities could be subject to a lifetime ban against firearm ownership under 18 U.S.C. 922(g)(4) in order to prevent risk of suicide.
[3] S. REP. NO. 90-1501, at 22 (1968).

bear a firearm. But why distinguish the length of time of that impairment based on an individual's election of what type of medicine or intoxicant they chose to consume rather than the actual period of intoxication and impairment? In other words, why create a distinction between alcohol and cannabis impairment when either use would temporarily permit restriction on that consumer's Second Amendment right? Historically, there is no analogue that evaluates the substance consumed rather than the period of impairment to permit such encroachment. Instead, the validity of the encroachment has been based upon actual conduct and an evaluation of an actual mental condition – not a blanket prohibition based upon the substance consumed. Sweeping deprivation based on conduct and mental infirmity is not the same as sweeping prohibition across a class of individuals who elect to use one form of medicine or intoxicant over another. Yet, that is exactly what 18 U.S.C. 922(g)(3) does. There is no historic analogue to 922(g)(3) that permits blanket prohibition based on the type of substance consumed rather than the time period in which that substance has an effect on the consumer. As such, the statute should be struck down under *Bruen*.

## I.   THE *BRUEN* HISTORICAL ANALYSIS TEST

The United States Supreme Court recently held in *New York State Rifle & Pistol Association, Inc. v. Bruen*, that when evaluating the constitutionality

of a law that may impede upon the guarantees under the Second Amendment, there must be a probing inquiry to determine if such impingement has an historical analogue. 142 S.Ct. at 2129–301. It held that the plain text and meaning of the Second Amendment covers an individual's conduct, namely, the right to carry and bear arms.   In defending any legislation that may impede that right, the government must then justify its regulation of that guaranteed right by demonstrating that the law is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Id*. at 2129–30, *quoting*, *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49 n.10 (1961); *Accord*, *US v. Harrison*, 2023 WL 1771138, *1 (W.D. Okla. Feb 3, 2023).

This historical framework analysis set forth in *Bruen* was a significant departure from prior precedent in that deference was no longer to be extended by the lower courts to the legislature(s). Such deference to the other branch of government "…is not the deference that the Constitution demands" where impingement on the Second Amendment is concerned. *Bruen*, at 2131. Rather: "[t]he inquiry is 'fairly straightforward' when the challenged regulation addresses a 'general societal problem that has persisted since the 18th century' because there 'the lack of a distinctly similar historical

regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." _Harrison_, Doc. #36, Pg. 10, *quoting*, _Bruen_, 142 S.Ct. at 2129-30.

By emphasizing the importance of the historical context and treatment of regulations around the right to carry and bear arms, the Supreme Court further opined that: "[i]f earlier generations addressed the societal problem, but did so through materially different means,' that too is evidence that the modern regulation is unconstitutional." _Bruen,_ 142 S.Ct. at 2131.

As such, the Supreme Court established that because "[c]onstitutional rights are enshrined with the scope they were understood to have when people adopted them," historical analogues in existence near the time the Second Amendment was adopted in 1791 are of primary relevance" and again in 1868 after passage of the 14th Amendment making the constitution and Bill of Rights applicable to the state. _Harrison_, *supra*, at Fn. 28, *quoting*, _Bruen_.

Determining whether 18 U.S.C. 922 establishes a sufficient basis to deprive Appellant of his right to bear arms simply because of cannabis usage requires a historic review of the prominent role of cannabis in American

history, and its federal penalization since 1937, to assess whether the statute passes constitutional muster.

## II.   THE ROOTS OF CANNABIS IN AMERICA

For over 300 years from the establishment of the colonies to the present day, the United States has had a rich history of cannabis cultivation, manufacturing, and consumption.

Cannabis was not only essential to the formation and economic success of our nation, but it was also <u>required</u> to be grown since the days of the nation's founding. Devoid of that history, a Court would readily overlook the agricultural, mercantile, and pharmacologic role of cannabis in human history and particularly the period from 1609 to the plant's prohibition in 1937 with the passage of the Marihuana Tax Act. P.L. 75-238 (1937).[4] So deprived, unreviewed by the Court would be the fact that the passage of the federal Controlled Substances Act signed into law by President Nixon in 1970 (21 U.S.C. 801, *et. seq.*), which designated cannabis as a Schedule I drug, ostensibly with no medical or societal validity, was predicated on racism and political/social oppression, not valid science. Despite the Schedule I designation, there has been an extraordinary resurgence of cannabis as

---

[4] The Marihuana Tax Act of 1937, <u>Pub. L.</u> <u>75–238</u>, 50 <u>Stat. 551</u>

legitimate medicine in 38 individual states since 1996 and as a permitted adult-use product in 23 of those states and the District of Columbia.

While that conflict between the supremacy of federal law and the nullification of it by states which have established those medical and adult use cannabis programs is quixotic, since 2015 Congress has effectively bypassed federal prohibition and instead protected and promoted those state cannabis programs. As pointed out by Justice Thomas: "[I]n every fiscal years [sic] since 2015, Congress has prohibited the Department of Justice from 'spending funds to prevent states' implementation of their own medical marijuana laws." _Standing Akimbo, LLC v. U.S._, 141 U.S. 2236, 2237 (2021)(Thomas, C., regarding the denial of certiorari). In fact, the most recent appropriations amendment was passed under section 531 of the Consolidated Appropriations Act of 2022. The constitutionality of those limitations restricting the abilities of federal law enforcement due to those spending appropriations has been upheld. See, e.g., _U.S. v. McIntosh_, 833 F.3d 1163 (9th Cir. 2016); _U.S. v. Bilodeau_, 24 F.4th 705, 714 (1st Cir. 2022).

This critical history, as set forth herein, should be dispositive of the issue before this Court.  In neither 1791 nor 1868 was legislation permitted that restricted an individual's right to carry and bear arms solely because of their status as a cannabis farmer or consumer of the plant for medical or

other purposes. Cannabis was ubiquitous in that culture. To the extent that it has temporary intoxicating effects, like alcohol, that historically was not sufficient grounds to establish a blanket prohibition stripping one of the Second Amendment. Those federal statutes were passed 200 or more years after the critical threshold dates of 1789 and 1868 – two eras where cannabis cultivation and use were widespread and legally permitted.

## III.  CANNABIS IS HISTORICALLY MORE AMERICAN THAN APPLE PIE

Few plants have been as important to and in American history as cannabis, yet it is vilified more than poison ivy! From the establishment of the colonies in the 1600s, when colonists were required by the King to cultivate and export cannabis[5], to the passage of the 1937 Marihuana Tax Act[6] nearly 300 years later, the United States was the world's largest producer and exporter of the plant. [7] It was farmed as early as 1619 by mandate of the

---

[5] Robert Deitch, HEMP -AMERICAN HISTORY REVISITED: THE PLANT WITH A DIVIDED HISTORY (2003), note 1 at 16 (In 1619, "[t]he Virginia Company, by decree of King James I ..., ordered every [property-owning] colonist ... to grow 100 [hemp] plants specifically for export.")

[6] P.L. 75-238 (1937).

[7] The cannabis plant has often been referred to as "hemp" or "marijuana" a derogatory slang term for the intoxicating form of the plant. Legally, the only difference between hemp and marijuana is the level of Delta-9 Tetrahydrocannabinol (THC), the euphoria-creating compound found in the plant and products produced from it. Under the 2018 Farm Bill, P.L. 115–334 (Dec. 20, 2018), Congress established that a cannabis plant with less than 0.3% THC content is hemp, and is federally legal and may be put

Virginia, Maryland, and Pennsylvania colonies, and many of the Founding Fathers, including Washington, Jefferson, Madison, and a host of others, were producers of it.[8]  Cannabis plants would be an acceptable form of legal tender for barter as established by the colonies of Virginia (1682), Maryland (1683), and Pennsylvania (1706).[9]

Some of the Founders and Framers of the Constitution, including Washington and Madison, were known to smoke cannabis for its pleasurable and satiating qualities.[10]  As participants in the drafting of the Constitution and Bill of Rights, who purportedly consumed cannabis, it is notable that prior to and after ratification of the Second Amendment in 1791, there was no proposed exception to or impingement upon the right to bear arms based upon cannabis cultivation or usage. That is a critical factor under *Bruen*'s historic analysis.

_____

into the stream of interstate commerce. A cannabis plant or product with more than that threshold amount is marijuana, which has been designated a Schedule I drug under 21 U.S.C. 801, et. seq., and is federally illegal for all purposes.

[8] Robert Deitch, HEMP -AMERICAN HISTORY REVISITED: THE PLANT WITH A DIVIDED HISTORY (2003), note 1 at 14; Marijuana Timeline, PBS, http://www.pbs.org/wgbh/pages/frontline/shows/dope/etc/cron.html (Reviewed 3/4/2023).

[9] Deitch, supra, note 1 at 19.

[10] Sonny, Julian: "The Presidents Who Admitted Smoking Weed", Elite Daily (2/18/2013), http://elitedaily.com/news/politics/presidents-admitted-smoking-weed/; See also, Deitch, at note 1 supra at 25.

Having homeopathic medical roots, pharmacologically, cannabis was formally introduced into the field of Western medicine by Dr. William O'Shaughnessy in the 1830s and was readily adopted in the United States.[11] Studies regarding the therapeutic properties of cannabis began as early as 1840 and were published in academic medical journals. Its medical intervention potential was rapidly explored; by 1850, cannabis was entered into the United States Pharmacopoeia as a treatment for a host of ailments and afflictions including "neuralgia, alcoholism, and opiate addiction, convulsive-inducing conditions."[12] The adoption of cannabis as a medicine was not reversed or rejected in the ensuing decades, nor in 1868 when the Fourteenth Amendment made the guaranteed right of the Second Amendment applicable to the states. This too is a critical historical factor under the _Bruen_ analysis. While federal law has prohibited the possession or use of cannabis for any reason for the last 86 years (since the passage of the 1937 Marihuana Tax Act and re-emphasized in 1970 with enactment of the Controlled Substances Act), many of those medical conditions have been treated by this federally illegal modality for the past 27 years since 1996, when California, and then 37 other states and the District of Columbia,

---

[11] Booth, Martin: CANNABIS: A HISTORY 109-10 (2003)
[12] Booth, supra note 70 at 113-14

legalized and established medical marijuana programs over the ensuing decades.

## IV.  **THE RISE OF RACISM AND PROHIBITION**

Over the ensuing 200 plus years from colonial times to 1937, the United States was the global juggernaut of cannabis. However, due to the Great Depression, xenophobia, racism, and societal manipulation by American industrialists, the cannabis prohibition movement fomented into the passage of the Marihuana Tax Act of 1937. Specific groups of individuals and migrants from certain socio-economic circumstances were the prime movers of that early prohibition movement. This is readily evident from the statements of Harry J. Anslinger, then the U.S. Department of Treasury's Commissioner of the Federal Bureau of Narcotics and driving force behind the 1937 prohibition law.[13] He was quoted often with statements such as:

> There are 100,000 total marijuana smokers in the US, and most are Negroes, Hispanics, Filipinos and entertainers. Their Satanic music, jazz and swing, result from marijuana usage. This marijuana causes white women to seek sexual relations with Negroes, entertainers and any others.[14]

---

[13] https://en.wikipedia.org/wiki/Harry_J._Anslinger
[14] Henry J. Anslinger, Testimony to Congress for Marihuana Tax Act, 1937

> Reefer makes darkies think they're as good as white men.[15]

> The primary reason to outlaw marijuana is its effect on the degenerate races.[16]

Anslinger's sentiments about cannabis as a social evil were clearly not based on science, but on racism and social oppression. President Nixon too would become a similar advocate of such atrocious rationalizations for placing cannabis "temporarily" as a Schedule I drug under the Controlled Substances Act.

## V.   WAR ON PEOPLE OF COLOR REBRANDED AS WAR ON DRUGS

President Nixon signed the federal Controlled Substances Act into law in 1970. *21 U.S.C. 801, et. seq.* As a result, cannabis was relegated to Schedule I based on purported findings that it: (1) lacked medical validity, (2) had a high risk of abuse, and (3) could not be researched without extreme caution and federal oversight.[17]

---

[15] Newton, David E. (16 January 2017) [2013]. "4. Profiles Harry J. Anslinger (1892-1975)". *Marijuana: A Reference Handbook*. Contemporary world issues (2nd ed.). Santa Barbara, California, California, United States of America: ABC-CLIO. p. 183.

[16] A-Z Quotes: https://www.azquotes.com/quote/543536

[17] 21 U.S.C. 812. That same Schedule I designation persists today 53 years later despite those 38 states that have established medical programs in spite of it.

Nixon had a motive for placing cannabis in Schedule I – to weaponize marijuana as a means to put down political challenges to his administration and supplant protest leaders and their movements that criticized him. This is amply evidenced in the following quote of John Ehrlichman, former Chief of Staff to President Nixon:

> The Nixon campaign in 1968, and the Nixon White House after that, had two enemies: the antiwar left and black people. You understand what I'm saying? We knew we couldn't make it illegal to be either against the war or black, but by getting the public to associate the hippies with marijuana and blacks with heroin, and then criminalizing both heavily, we could disrupt those communities. We could arrest their leaders, raid their homes, break up their meetings, and vilify them night after night on the evening news. Did we know we were lying about the drugs? Of course we did.[18]

## VI.   CONGRESS ACTIVELY PROMOTES MEDICAL CANNABIS

In 1996 California passed the Compassionate Use Act, also known as "Prop 215," which established the nation's first medical marijuana program.[19]   Since then, the vast majority of states in the union have passed

---

[18] Baum, Dan: "Legalize It All", Harper's Weekly, April, 2016 - https://harpers.org/archive/2016/04/legalize-it-all/

[19] California Uniform Controlled Substances Act, Health and Safety Code, Chapter 6, Art. 2, 11362.5 (1996); https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?sectionNum=11362.5.&lawCode=HSC.

similar legislation legalizing the medical use of cannabis, including the state of Florida.[20]

Congress has the power under the Constitution to shut these programs down because they nullify the supremacy of the federal Controlled Substances Act and its Schedule I designation and prohibition of cannabis. *See*, <u>*Gonzales v. Raich*</u>, <u>545 U.S. 1</u>, <u>125 S.Ct. 2195</u>, <u>162 L.Ed.2d 1</u> (2005). Instead, Congress has actually attempted to protect and promote those programs. In 2014, Congress approved a spending appropriations measure designed to prohibit the Department of Justice from using federal funds to investigate and prosecute medical cannabis patients and the medical facilities that supplied them, provided the operators were following the state law where they resided.[21] Every two years since then, Congress has passed similar spending appropriations measures ensuring that there would be no federal interference with state medical cannabis programs.[22]

---

[20] Amendment 2 to Florida Constitution, passed by 71% voter approval, November 8, 2016.

[21] "Rohrbacher-Farr Amendment" to the Commerce, Justice, Science, and Related Agencies Appropriations Act, 2015 (H.R. 4660).

[22] That Amendment was signed into law by President Obama on December 16, 2014. It was extended as the "Rohrbacher-Blumenauer Amendment" by means of Consolidated Appropriations Act of 2016 ("The 2016 Omnibus Spending Bill," Pub. L. 114-113), signed into law on December 18, 2015. Further extensions have been in the Consolidated Appropriations Act 2018 ("The 2018 Omnibus Spending Bill," Pub. L. 115-141) signed by President

This 9-year, federally-condoned nullification of the federal prohibition of cannabis by Congress to affirmatively sanction, promote, and protect state cannabis programs must be included in the historical analysis and added to the sum total of the years in which cannabis has been or is effectively made federally legal in the United States.

## VII.  THERE WAS NO IMPINGEMENT OF 2ND AMENDMENT RIGHTS DUE TO CANNABIS IN 1791 OR 1868

Applying _Bruen_'s historic analysis, with close attention to 1789 and 1868 makes clear that neither the Founders, Framers, or elected leaders of the United States, all of whom had intimate knowledge of the role of cannabis cultivation and consumption in the colonies and new nation, took no legislative action to disarm cannabis consumers of the right to bear arms. It is telling that there is no analogue in American history akin to 18 U.S.C. 922(g)(3) that caused citizens to be stripped of their guaranteed Second Amendment right simply because of their membership in a class of people. Rather, the closest analogue laws related to individuals who were under the

---

Trump on March 23, 2018, and extended again by him to November 21, 2019 (H.R. 4378). On December 20, 2019, President Trump signed the "Consolidated Appropriations Act, 2020" (H.R. 1158). President Biden has also approved those appropriations with section 531 of the Consolidated Appropriations Act of 2022 and section 531 of the Consolidated Appropriations Act of 2023 (H.R. 2617, p. 103, https://www.congress.gov/117/bills/hr2617/BILLS-117hr2617enr.pdf.)

influence of an intoxicant for only that period of time that the intoxicant was actively impairing them.

From the Virginia colony in 1619, to the ratification of the Second Amendment in 1791, to the ratification of the Fourteenth Amendment in 1868, the colonies and later United States readily embraced cannabis cultivation and tolerated its consumption without any impingement or restriction on any guaranteed rights under the Constitution.

The federal prohibition of cannabis in 1937 with passage of the Marihuana Tax Act, and its reiteration again in 1970 with the Schedule I designation under the Controlled Substances Act, spans just four score and seven years - or 87 years. That brief period pales in comparison to the hundreds of years where cannabis had been deeply rooted in American culture, agriculture, and economic hegemony.

From 1609 when the Virginia colony was mandated to grow cannabis, to 1937 when the Marihuana Tax Act was enacted, equals 326 years. While California rolled out its medical marijuana program in 1996 in contravention of federal law and therefore those years are not accounted for here, there is an additional 9-year period from 2014 to present day where Congress has intentionally approved spending appropriations measures shielding state

medical programs from federal interference. As such, cannabis has been lawfully cultivated and consumed for 335 years in this country's history.

In sum, viewed through the historical lens of <u>*Bruen*</u>, cannabis has been an essential to American agriculture and social culture for 335 years without impingement on a cultivator or consumer's right to carry and bear arms. As such, this Court should find that 18 U.S.C. 922(g)(3) is unconstitutional.

## NORML's POSITION IS CONSTITUTIONAL

NORML does not contest that cannabis consumers should be denied the right to bear arms during the window of time where the effects of cannabis consumption and intoxication may impair them. That position is consistent with historic analogues. While there is no doubt that exposure to certain levels of THC and cannabinoid compounds may cause a consumer to experience limited periods of impairment, that condition is temporary and passes in a matter of hours. Similar to imbibers of alcohol, who historically have been validly deprived of their right to carry or use a firearm only during the period of impairment, no such analogous treatment has been afforded to cannabis consumers under federal criminal laws. *See*, *United States v. Harrison*, No. 22-CR-00328, <u>2023 WL 1771138</u>, *1 (W.D. Okla. Feb 3, 2023) at fn. 32, *citing*, *State v. Weber*, <u>168 N.E.3d 468, 489-96</u> (Ohio

2020)(prohibiting carrying or use of a firearm "while under the influence of alcohol or any drug of abuse"), and at fn. 34 (collecting cases). Rather, 18 U.S.C. 922(g), creates a categorical prohibition and deprivation <u>based upon the intoxicating substance itself</u> – cannabis – not the period of intoxication by a substance. That rationale does not have foundational roots in American history and the statute should be found unconstitutional under <u>*Bruen*</u>.

## CONCLUSION

For the reasons set forth herein, this Court should find 18 U.S.C.

922(g)(3) to be unconstitutional.

Dated: July 6, 2023

<div style="margin-left: 40%;">

### Gerald H. Goldstein

Gerald H. Goldstein
Goldstein & Orr
29th Floor Tower Life Building
310 St. Mary's Street
San Antonio, TX 78205
(210) 226-1463
gerrygoldstein@gmail.com
Chair, NORML National Legal
Committee, Attorney of Record

### David Holland

David C. Holland
Prince Lobel Tye LLP
41 Madison Avenue, Suite 3100
New York, New York 10016
(212) 842-2480
DHolland@PrinceLobel.com
Co-Chair, NORML Amicus
Committee

### Joseph A. Bondy

Joseph A. Bondy
Law Offices of Joseph A. Bondy
1776 Broadway, Suite 2000
New York, New York 10019
(212) 219-3572
josephbondy@mac.com
Co-Chair, NORML Amicus
Committee

</div>