# FEDERAL PUBLIC DEFENDER
## NORTHERN AND SOUTHERN DISTRICTS OF MISSISSIPPI

OMODARE B. JUPITER
Federal Public Defender

First Assistant
ABBY BRUMLEY EDWARDS
Senior Litigator
MICHAEL L. SCOTT
Assistant Federal Public Defender
PRINCESS ABBY
Research & Writing Specialists
TOM C. TURNER
CARMEN G. CASTILLA
ALEXANDRA R. ROSENBLATT

200 SOUTH LAMAR STREET ~ SUITE 200-N
JACKSON, MISSISSIPPI 39201
(601) 948-4284 FACSIMILE (601) 948-5510

1200 JEFFERSON AVENUE ~ SUITE 100
OXFORD, MISSISSIPPI 38655
(662) 236-2889 FACSIMILE (662) 234-0428

2510 14th STREET ~ SUITE 902
GULFPORT, MISSISSIPPI 39501
(228) 865-1202 FACSIMILE (228) 867-1907

Oxford
Assistant Federal Public Defenders
GREGORY S. PARK
M. SCOTT DAVIS
MERRILL K. NORDSTROM
Research & Writing Specialist
KIGER L. SIGH

Gulfport
Assistant Federal Public Defenders
LEILANI L. TYNES
CRAIG T. ROSE
Research & Writing Specialist
VICTORIA E. McINTYRE

September 18, 2024

Mr. Lyle W. Cayce
Clerk of the Court
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, Louisiana 70130

  Re: *United States v. Daniels*, No. 22-60596
     Patrick Darnell Daniels' Letter Brief Addressing
     *United States v. Connelly*, 2024 WL 3963874 (5th Cir. Aug. 28, 2024)

Dear Mr. Cayce:

  This Court should "hold the government to its heavy burden," *Connelly*, 2024 WL 396387, at *3, and again find that 18 U.S.C. § 922(g)(3) is unconstitutional as applied to Mr. Daniels. The *Connelly* decision is on all fours with Mr. Daniels's case, and the *Connelly* panel properly considered *United States v. Rahimi*, 144 S. Ct. 1889 (2024) ("*Rahimi 2024*") in its evaluation of *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1 (2022).[1] Like in *Connelly*, on this record, "[t]he analogical reasoning *Bruen* and *Rahimi 2024* prescribed cannot stretch [so] far" as to support the disarmament of Mr. Daniels. 2024 WL 396387, at *10.

---

[1] The Supreme Court directed this Court to reconsider Mr. Daniels's case after its decision in *Rahimi 2024*. *United States v. Daniels*, No. 23-376, 144 S. Ct. 2707 (2024). For the purposes of this brief, Mr. Daniels will presume that this panel will consider the case separately and more fully, yet he notes that under the rule of orderliness practiced in this Circuit, *Connelly* should bind this panel to the conclusion that § 922(g)(3) is unconstitutional as applied to Mr. Daniels because *Connelly* evaluates the constitutionality of § 922(g)(3) through the lens of *Rahimi 2024*. *See Newman v. Plains All American Pipeline, LP*, 23 F.4th 393, 400 (5th Cir. 2022); *In re Bonvillian Marine Svcs., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021). Either way, the result is the same: § 922(g)(3) is unconstitutional as applied to Mr. Daniels.

1

A.  *Connelly*'s Interpretation of *Rahimi 2024*

The *Connelly* decision examines the *Rahimi 2024* decision in detail. Notably, that analysis reveals that *Rahimi 2024* does not retreat from the *Bruen* test, as evidenced by quotes from *Rahimi 2024* that are set forth verbatim in *Bruen*. *See Connelly*, 2024 WL 3963874, at *2-3. *Rahimi 2024* still holds that the Second Amendment protects a fundamental (but not unlimited) right. *See id.* at *2 (quoting *Rahimi 2024*, 144 S. Ct. at 1897).

As *Connelly* explains, *Rahimi 2024* still requires courts to apply the "historical tradition" test. *Connelly*, 2024 WL 3963874, at *2 (quoting *Bruen*, 597 U.S. at 17). First, courts must determine "whether the Second Amendment's plain text covers an individual's conduct." *Connelly*, 2024 WL 3963874, at *2 (quoting *Bruen*, 597 U.S. at 17). If so, courts must then determine "whether the challenged regulation is consistent with [i.e. "relevantly similar to"] the principles that underpin our regulatory tradition." *Connelly*, 2024 WL 3963874, at *2 (quoting *Rahimi 2024*, 144 S. Ct. at 1898 and citing *Bruen*, 597 U.S. at 26-31) (internal quotation marks omitted). The Government still bears the burden of "finding and explicating 'historical precursors' supporting the challenged law's constitutionality." *Connelly*, 2024 WL 3963874, at *2 (quoting *Bruen*, 597 U.S. at 29). Courts must still look at the "conceptual fit" between the historical analogues and the challenged regulations, using "analogical reasoning and sound judgment." *Id.* at *2 (quoting *Rahimi 2024*, 144 S. Ct. at 1897-98).

According to *Connelly*, where *Rahimi 2024* charts new ground is in the analysis of historical analogues. *Bruen* states clearly that courts must evaluate why and how a regulation burdens the Second Amendment. 597 U.S. at 29. *Rahimi 2024*, however, emphasizes that "'[w]hy' and 'how' a regulation burdens the right presents two separate questions. *Connelly*, 2024 WL 3963874, at *2. "[T]hey must both (1) address a comparable problem (the 'why') and (2) place a comparable burden on the right holder (the 'how'). *Id.* at *3 (citing *Rahimi 2024*, 144 S. Ct. at 1898 and *Bruen*, 597 U.S. at 27-30).

B.  ***Rahimi 2024* strengthens this Court's analysis in the original *Daniels* decision.**

With that guidance in mind, the *Connelly* Court then undertook the *Bruen*/*Rahimi 2024* analysis. As an initial matter, the *Connelly* decision held that the defendant was "a member of our political community and thus has a presumptive

2

right to bear arms. By infringing on that right, § 922(g)(3) contradicts the Second Amendment's plain text." *Connelly*, 2024 WL 3963874, at *3.

The *Connelly* Court then analyzed the "three buckets of historical analogues" that the Government had presented. *Id*. Those "three buckets" are identical to the ones that the Government has presented in Mr. Daniels's case: "(1) laws disarming the mentally ill, (2) laws disarming 'dangerous' individuals, and (3) intoxication laws." *Id*. The court "consider[ed] and reject[ed] each." *Id.*

### C. Historical analogues institutionalizing the mentally ill are not analogous to the permanent disarmament of marijuana users.

*Connelly* rejected the Government's argument that historical analogues institutionalizing the mentally ill were analogous to § 922(g)(3), finding the Government's position "untenable." *Connelly*, 2024 WL 3963874, at **3-5 (quote at *4). First, *Connelly* held that the "historical tradition" of "disarming the mentally ill do[es] not address a problem comparable to § 922(g)(3)." *Id.* at *3. The "historical tradition" of disarming the mentally ill was, "at best," "implicit at the Founding" insofar as justices of the peace could lock up dangerous "lunatics." *Id.* By the Government's logic, depriving a mentally ill person of his freedom necessarily meant disarming him. *See id.* The *Connelly* decision properly held, however, that "institutionalizing those so mentally ill that they present a danger to themselves or others does not give clear guidance about which lesser impairments are serious enough to warrant constitutional deprivations." *Id.* at *4.

Because some founders equated alcohol intoxication with being mentally ill, the *Connelly* Court assumed that "marijuana intoxication is, for our purposes, most analogous to short-term mental impairment." *Id*. Yet, the Court held that "laws designed to disarm the severely mentally ill do not justify depriving those of sound mind of their Second Amendment rights." *Id.* It explained that such an analogy can only stand "if someone is so intoxicated as to be in a state comparable to 'lunacy.'" *Id.* Evidence of present impairment is important: "Just as there is no historical justification for disarming citizens of sound mind, there is no historical justification for disarming a sober citizen not presently under an impairing influence." *Id.* The Government's mentally ill analogies failed.

The *Connelly* Court further discredited the Government's "untenable" position: "The Founders purportedly institutionalized 'lunatics' and stripped them of firearms yet allowed alcoholics to carry firearms while sober (and possess them generally)." *Id.* Moreover, at the Founding, if a person recovered his sanity, his rights

3

were restored. *See id.* "So again, just as there is no historical justification for disarming citizens of sound mind (including those adjudged mentally ill but who have been reevaluated and deemed healthy . . . ), there is no historical justification for disarming sober citizens not *presently* under an impairing influence." *Id.*

In other words, "[w]hile intoxicated, [Mr. Daniels] *may* be comparable to a severely mentally ill person whom the Founders would disarm. But, while sober, [he] is like a repeat alcohol user between periods of intoxication, whom the Founders would *not* disarm." *Id.* at *5. The *Connelly* Court held that the Government could only succeed (and only "might succeed") "if it were able to demonstrate that a defendant were "permanently impaired in a way comparable to severe mental illness" or was such a regular and heavy drug user that he was "continually impaired." *Id*. The Government presented no evidence in *Connelly* to support a finding that Ms. Connelly was under the influence at the time of her arrest. The same is true for Mr. Daniels. The Government presented no evidence of marijuana intoxication at the time of Mr. Daniels's traffic stop, and all the evidence presented demonstrated that Mr. Daniels was not impaired. Accordingly, the Government cannot succeed.

**D.    A general notion of "dangerousness" is an insufficient analogue.**

The *Connelly* Court also rejected the Government's historical analogues that disarmed "dangerous persons." *Connelly*, 2024 WL 3963874, at *5. The Government's analogues supported disarming "political dissidents from owning guns in periods of conflict" and "religious minorities." *See id.* The court held that the reasons for those disarmaments—the "why"—was not relevantly similar to § 922(g)(3). *Id.* at *6. "Marijuana users are not a class of political traitors, as English Loyalists were perceived to be. Nor are they like Catholics and other religious dissenters who were seen as potential insurrectionists." *Id.*

*Rahimi 2024* is instructive on this point. As the *Connelly* Court explained: "§ 922(g)(3) is not limited to those judicially determined to have had a history of violent behavior (or a propensity to engage in same) like those persons discussed in *Rahimi 2024*—not all members of the set 'drug users' are violent." *Id*. Because marijuana users were more akin to alcohol users than British Loyalists, "the government's attempt to analogize non-violent marijuana users to 'dangerous' persons fails to present a 'relevantly similar' 'why.'" *Id.* at *7 (citing *Rahimi 2024*, 144 S. Ct. at 1898 and *Bruen*, 597 U.S. at 27-30).

4

### E. Intoxication laws "do not impose a comparable burden."

The Government's proffered historical analogues disarming the intoxicated were unconvincing to the *Connelly* Court. First, the Founding-era statutes "were few, and primarily concerned with (1) misuse of weapons while intoxicated and (2) disciplining state militias." *Connelly*, 2024 WL 3963874 at *8. And notably, while those statutes may have "banned *carrying* weapons while under the influence, none barred gun *possession* by regular drinkers." *Id.* Second, the three post-Reconstruction statutes that the Government proffered only prohibited carrying firearms while "*actively intoxicated*." *Id.* at *9. To the extent these statutes were comparable, the "how" was narrow in scope.

Section 922(g)(3), on the other hand, is broad. *See id*. "The statutory term 'unlawful user' captures regular marijuana users, but the temporal nexus is most generously described as vague—it does not specify how recently an individual must 'use' drugs to qualify for the prohibition." *Id.* Section 922(g)(3) is so unlike the Government's proffered analogues that its broad sweep is "stunning." *Id.*

### F. Conclusion

The Government proffered the same analogues in *Connelly* that it proffered in Mr. Daniels's case. Just as in Ms. Connelly's case, the Government failed to establish "how much [Mr. Daniels] used . . . or when [he] last used, and there is no evidence that [he] was intoxicated at the time [he] was arrested." *Id.* at *10. The holding in *Connelly* rings true here: "[b]y regulating [Mr. Daniels] based on habitual or occasional drug use, § 922(g)(3) imposes a far greater burden on [his] Second Amendment rights than our history and tradition of firearms regulation can support." *Id.* Section 922(g)(3) is unconstitutional as applied to Mr. Daniels.

Respectfully submitted,

OMODARE B. JUPITER
Federal Public Defender

*/s/ Leilani L. Tynes*
LEILANI L. TYNES
Assistant Federal Public Defender

5

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 18th day of September, 2024, I electronically filed the foregoing Letter Brief with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

                                      */s/ Leilani Tynes*
                                      LEILANI L. TYNES
                                      Assistant Federal Public Defender